J. B. SUMNER, Adm'r, v. T. J. CANDLER.

*Evidence—Transactions and Communications with Deceased Persons.*

1. Assignment of error for the exclusion of proposed evidence must distinctly point out its relevancy and materiality.

2. A party to an action is not permitted to testify in his own behalf against the executor, administrator, &c., of a deceased person, unless the executor or administrator, &c., is examined, or the testimony of the deceased person is given in evidence, when the door is opened to the opposing party to testify for himself, but only as to those particular transactions and communications to which the testimony of the deceased person or his representative was pertinent. *The Code,* §590.

(*Knight* v. *Killebrew,* 86 N. C., 400; *Bland* v. *O'Hagan,* 64 N. C., 471, cited and approved).

This was a CIVIL ACTION, tried before *Graves, Judge,* at Spring Term, 1885, of BUNCOMBE Superior Court.

The action was brought to recover from the defendant, the amount of certain claims against the State of North Carolina,

drawn on the Treasury of the State, which the defendant drew from the said treasury, to the use of the plaintiff. The defendant relied upon the plea of accord and satisfaction. On the trial the plaintiff introduced himself as a witness and testified as follows: "I went over to Stephens' mill with my father and passed the mill, going towards Candler's house, and met him on a horse with a turn of grain. Candler said his wife had hunted for the receipts; that he would let my father have the horse, bridle and saddle, and the order for the two hundred dollar claim." On cross-examination he said he had been prosecuting this suit. Jesse Sumner, son of the plaintiff's intestate, was then introduced by the plaintiff, and testified as follows: "I am the son of Jesse Sumner, who died about August 8th, 1878. About 1875 I saw Jesse Sumner and Candler together. They were at the steps of the Roberts building in Asheville. I said to my father, "Let's go home." Candler said, "I will hunt the receipts." Sumner said, he must get the receipts, he did not want the receipts. My father said, he would take the horse, bridle and saddle and suit of clothing for the claim, and Candler was to get up the receipts for the claim; said if he did get the receipts, he could get a proper voucher from the treasurer, and it would be all right. He had been a witness all the time. This was the first time he had been sworn."

The defendant introduced himself as a witness and testified as follows: " I have heard the testimony of John Sumner, the plaintiff. Nothing occurred at the mill; on the 18th day of February, 1875, I met John Sumner and his father. Never was a word mentioned on the subject in the presence of John at that place or any other place."

At this point the defendant offered to assign the reason why nothing was said, and the plaintiff objected. The court said the defendant might testify as to the transaction or communication with deceased, about which the plaintiff, his administrator, had testified, but not as to any other transaction or communication with the deceased. The defendant excepted. The witness then

testified that the witness, the plaintiff, was not at the house of John Hendrix.

The defendant then offered to testify in regard to the matter testified to by Jesse Sumner, son of deceased; objected to, objection sustained, and defendant excepted.

The defendant then offered himself as a witness to testify for all purposes. Plaintiff objected; objection sustained, exception by the defendant. There was a verdict and judgment for the plaintiff, and the defendant appealed.

*Messrs. Theo. F. Davidson* and *J. H. Merrimon,* for the plaintiff.

*Messrs. McLoud & Moore,* for the defendant.

ASHE, J. (after stating the facts). The first exception taken by the defendant was to His Honor's refusal to allow the testimony of the defendant, as to the reason why nothing was said when he and the plaintiff's intestate met near the mill. There was no error in the ruling of His Honor in that respect. He told the witness, he might testify as to the transaction or communication with the deceased. The fact that the witness did not proceed to testify, was evidence that what he proposed to say was not about the transaction or communication that was testified to by the plaintiff, and besides it is a well established rule of evidence, that error cannot be assigned in the ruling out of evidence, unless it is distinctly shown "what the evidence was, in order that its relevancy may appear, and that a prejudice has arisen from its rejection," and in this case it does. not appear what the rejected evidence was, and we cannot see that it was pertinent or material. *Knight* v. *Killebrew,* 86 N. C., 400; *Bland* v. *O'Hagan,* 64 N. C., 471.

Nor was there any error in the ruling upon the ground of the second exception.

The plaintiff, as the administrator of Jesse Sumner, had introduced a witness who testified to a conversation between his intes-

tate and the defendant. The defendant then offered himself as a witness to explain or contradict the testimony of the plaintiff's witness. As a party to an action, one may be admitted to testify in his own behalf under section 342, C. C. P., section 589 of *The Code.* But by section 343, C. C. P., section 590 of *The Code,* he is excluded from the right of being examined as a witness in his own behalf, against the executor, administrator, &c., of a deceased person. There is, however, an exception to this rule contained in the *proviso,* that when the executor or administrator, &c., is examined as a witness in his own behalf, or the testimony of the deceased person is given in evidence in regard to the same transaction or communication. In such a case it is held the door is opened, and the opposing party may offer himself as a witness and testify in regard to the *same* transaction or communication.

But the plaintiff has not offered himself as a witness in his own behalf as to the conversation between his intestate and defendant, as testified to by Jesse Sumner, nor had he offered in evidence any testimony of his intestate. The testimony, therefore, was clearly excluded by section 590 of *The Code.*

The remaining exception, to the refusal of the Court to admit the defendant to testify for all purposes, was equally untenable. When a party to an action is admitted to testify in his own behalf under the *proviso* or exception in the section 590 of *The Code,* the testimony is restricted to the *same* transaction or communication as testified to by the opposite party. It does not contemplate opening the door so wide as contended for by the defendant.

There is no error. The judgment of the Superior Court of Buncombe county is affirmed.

No error.                                        Affirmed.