A. L. REILING, JR., Appellant, v. MARIAN L. RUSSELL and BARNEY M. RUSSELL.—134 S. W. (2d) 33.

Division One, December 13, 1939.

*Homer A. Cope, Cope & Hadsell* and *Walter A. Raymond* for appellant.

518

*Wm. F. Knowles, Paul C. Sprinkle* and *Sprinkle & Knowles*  for respondents.

HAYS, P. J.—Appellant, who was plaintiff in the court below, seeks to recover damages for personal injuries received in an automobile accident which occurred in September, 1936, in Kansas City. Plaintiff, a pedestrian, was crossing McGee Street trafficway a short distance south of its intersection with Twentieth Street when he was struck and knocked down by an automobile driven by the defendant Marian L. Russell. The car belonged to Mrs. Russell's husband and co-defendant, Dr. Barney M. Russell, and at the time he was riding with her. It seems conceded that Mrs. Russell was driving the car as her husband's agent and was acting within the scope of her authority as such.

The evidence bearing upon the facts of the accident may be summarized as follows: McGee Street runs north and south and is crossed by Twentieth Street which runs east and west. The southwest corner of this intersection is occupied by a Conoco Filling Station. West of the Filling Station on Twentieth Street and extending to Grand Avenue is a retail establishment of the Firestone Service Stores in which plaintiff was employed in September, 1936. The drive into the Conoco Station enters from McGee Street and the north line of the south part of this drive is fifty feet south of the intersection of McGee and Twentieth Streets. Beyond this drive is a restaurant. Across McGee Street from the Filling Station there is located a "Shanty" used by the Kansas City Terminal Railway.

On September 12, 1936, plaintiff was instructed by one Quinn, his immediate superior, to go to the railroad shanty and take a bill of lading for the purpose of having an empty tank car released. He left the back door of the Firestone Building, passed through the Conoco property, and emerged into McGee Street some distance south of the intersection. Plaintiff says he entered the street from the Conoco

Drive above mentioned, but defendants' evidence tends to show that he came out directly in front of the restaurant. Defendants state that plaintiff jumped out suddenly from between certain cars which were parked on McGee Street in front of the restaurant; that he started to run or trot across the street and upon getting directly in front of defendants' car he stopped momentarily. Plaintiff says that he was walking at his usual gait; that he looked both ways before entering the street, and then started to walk directly across it, when he was struck by the defendants. Be that as it may, defendants' automobile, approaching from the north, stopped for a moment at Twentieth Street and then came on south and struck the plaintiff. Defendants' automobile was following another car which preceded it at a distance of about twenty feet. Plaintiff says that the point of impact was the approximate center of McGee Street, but defendants place the collision some five to eight feet west of the center line. It is defendants' contention that as soon as Mrs. Russell saw the plaintiff she applied her brakes and came to a stop as soon as possible. The car actually stopped a few feet south of the point at which it hit plaintiff. Plaintiff was struck by the left portion of defendants' automobile and, had the car been swerved to the right some eighteen inches or two feet, the collision would not have occurred. The evidence is conflicting as to whether this deflection in course could have been accomplished by Mrs. Russell after she saw the plaintiff or, by the exercise of proper care, could have seen him. The speed of defendants' car is estimated by plaintiff's witnesses at thirty miles an hour and by those of the defendants at fifteen.

The petition alleges that plaintiff received numerous injuries to his back, head, extremities and internal organs; that on account of such injuries he suffered great pain and had been disabled, ''and will so suffer and be disabled in the future;'' that his injuries were ''severe, permanent and progressive;'' that he had suffered a loss of earnings.

After the accident plaintiff received emergency treatment in the General Hospital in Kansas City, Missouri, and was removed from said hospital in a short time to the Providence Hospital in Kansas City, Kansas, where he stayed for eight days. After this he was taken to the home of his mother-in-law and was there confined to bed for four weeks. He did not return to work until December 15th, after which he attempted to do some light work but was not put back on the payroll until the first of January, 1937. He continued rather unsuccessfully to try to work during January, but had to quit toward the end of the month because of the pain from his injuries. The case was tried during the latter part of February.

Although the petition contained several assignments of primary negligence, in addition to an assignment of negligence under the humanitarian doctrine, plaintiff went to the jury upon the latter

assignment only. There was a verdict and judgment for both defendants and plaintiff appealed therefrom. In this status of the case, the petition having sought judgment for $25,000 and the defendants having prevailed below, the amount in dispute is that sum, and fixes the appellate jurisdiction in this court.

Appellant makes two assignments of error: (1) The reception by the trial court of evidence elicited by the defendants that plaintiff had received payments from his employer under the Workmen's Compensation Act growing out of the accident here in suit; (2) The giving of Instruction ''D'' requested by the defendants.

I. When the case was called for trial, and before the impaneling of the jury, plaintiff's counsel stated to the court that plaintiff had drawn compensation for these injuries from his employer's insurer, and he then objected to any reference being made to this matter on trial. Counsel for the defendants then announced to the court that he intended to go into this matter. There being no question before the court to which an objection could properly be addressed, the trial judge refused to rule at the time. The trial proceeded and plaintiff took the stand in his own behalf. He testified *inter alia* to the nature and extent of his injuries and his loss of time from work and as to the exact amount of his wages. Counsel for the plaintiff thereupon stated to the court, out of the presence of the jury, that he was informed that defendants intended to cross-examine plaintiff about the receipt of compensation and that he would object to that. His objection was overruled. On cross-examination the defendants proceeded to elicit from the plaintiff, over the repeated objection of his counsel, the fact that from the date of the accident until the first of January, 1937, he had been paid compensation and that his compensation payments stopped on January 1st. Similar evidence was brought out on cross-examination of Mr. Quinn, plaintiff's superior, also over the plaintiff's objection. It was not claimed by either party that the question of compensation had been adjudicated by the Workmen's Compensation Commission.

Respondents' position upon the question of the admissibility of this evidence may be stated as follows: Appellant, assuming that the present accident arose out of and in the course of his employment, was entitled to receive from his employer or its insurer compensation for total temporary disability up to a maximum of four hundred weeks (Sec. 3313, R. S. 1929), or for partial temporary disability up to a maximum of one hundred weeks (Sec. 3314). He was also entitled under Section 3315 to compensation for partial permanent disability under the schedules contained in such section. Respondents further contend that the fact that appellant received compensation for some fifteen weeks only is an admission on his part that disability ceased on January 1st, and, as he claimed on the trial in February to

be still disabled and that his disability was permanent, such admission was properly received against him.

■ With the respondents' major premise, to-wit: that an extra-judicial admission made by a party to litigation is always admissible against him, we agree. [Lareau v. Lareau (Mo.), 208 S. W. 241; Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S. W. (2d) 618; Black v. Epstein, 221 Mo. 286, 120 S. W. 754; Sparr v. Wellman, 11 Mo. 230.] It is also true, as stated by respondents, that such an extra-judicial admission need not be made in words; it may consist of nonverbal acts of the party. ' [Freeman v. Kansas City Public Service Co., 30 S. W. (2d) 176; Rice v. Transit Co., 186 S. W. 568; State v. Furgerson, 162 Mo. 668, 63 S. W. 101; State v. Mathews, 202 Mo. 143, 100 S. W. 420; State v. Howe, 287 Mo. 1, 228 S. W. 477.] Thus where in another suit, involving similar issues, one of the parties, who is also a party to the subsequent litigation, has been guilty of fraudulent conduct from which can be logically inferred his belief in the existence or nonexistence of some fact in issue in the second suit, such fraudulent conduct in the course of the former litigation may be admitted in evidence against him. [State v. Seevers, 108 Iowa, 738, 78 N. W. 705; State v. Staples, 47 N. H. 113.]

■ But, did this appellant do anything with respect to the compensation matter which is an admission on his part that his disability had ceased on January 1st or that there was no disability, total or permanent? Assuming that the appellant's injuries were caused by an accident arising out of and in the course of his employment, his employer or its insurer owed him a duty to continue paying compensation while the disability lasted up to the limits contained in the Compensation Act. Recognizing this legal duty, the insurance carrier did pay him compensation for fifteen weeks. Of course, this voluntary act on the part of the employer's insurer was in no sense an act of either of the parties to the present litigation. Thereafter on the first of January the insurer, evidently concluding from its own investigation that disability had ceased, stopped paying compensation; but this again was an act not of the present appellant but of the insurer, and such insurer was not his agent. Therefore its act cannot constitute an admission on his part. It is true that after the insurer stopped paying compensation the appellant might within six months have filed his claim before the Commission, but he had a right to pursue his remedy against respondents instead of filing his claim, or to concurrently proceed against both respondents and his employer; and it is difficult to see how his failure to file a compensation claim for some two months can be construed as an admission upon his part that his disability ceased, particularly in view of the fact that at that very time he was vigorously pursuing his remedy against the respondents.

It might be argued that since appellant was claiming damages for loss of earnings, the amount of the compensation received could properly be deducted from his lost earnings. Such, however, is not the law; for the injured employee is entitled to sue a third party wrongdoer, even though, because of the fact that the accident arose out of and in the course of his employment, his employer might also be liable and even though he has received compensation from his employer. In the event of a recovery from the third party the employer or insurer is entitled to receive, out of the damages collected, an amount equal to the compensation paid the employee. [Sec. 3309, R. S. 1929.]

We therefore hold that the admission of evidence concerning such compensation payments was error. However, notwithstanding the jury found against the appellant and the verdict necessarily included a finding that there was no liability on the part of respondents, the jury did not have to consider the matter of damages. Further, respondents claim that the evidence in regard to compensation could only have had a bearing upon the issue as to damages, and for that reason, they say, such error was not prejudicial. As the cause will have to be reversed and remanded for reasons assigned in a subsequent paragraph, we are not called upon here to decide whether the error just pointed out would of itself and under the circumstances of this case warrant a reversal.

II. Appellant also complains of the giving of Instruction "D" requested by the respondents. A consideration of the various attacks made upon this instruction requires that it be set out in full in spite of its length. It was as follows:

"The court instructs the jury that if you find and believe from the evidence that at all times while defendants' automobile was being operated south of 20th Street on McGee Street, said automobile was being operated by the exercise of the highest degree of care, if you so find, and if you further find and believe from the evidence that plaintiff ran out from the west side of McGee Street towards the east side thereof at a place 60 to 75 feet south of the south curb line of 20th Street, if you so find, and that at said time and place defendants' automobile was being driven south on McGee Street so that the right side thereof was from 3 to 6 feet from parked cars on the west side of McGee Street, if you so find, and if you further find and believe from the evidence that plaintiff ran between the front end of defendants' automobile and the rear end of an automobile immediately preceding defendants' automobile, if you so find, and if you further find and believe from the evidence that when plaintiff ran out between said parked cars, if you so find, the front end of defendants' automobile was only 12 or 15 feet north of the plaintiff, if you so find, and if you further find and believe from the evidence that while

plaintiff was running and when he had reached a point directly in front of defendants' automobile, the plaintiff stopped there, if you so find, and if you further find and believe from the evidence that upon seeing plaintiff in a position of imminent peril or approaching immediately a position of imminent peril, the driver of defendants' automobile immediately attempted to stop said automobile, if you so find, but that said automobile did strike the plaintiff, and traveled a few feet further after striking plaintiff, if you so find, and if you further find and believe from the evidence that running out into the street and in front of defendants' automobile in the manner and at the time aforesaid, if you so find, was the sole and direct cause of the accident and plaintiff's injuries, if you so find, then you are instructed that the plaintiff cannot recover and your verdict shall be for the defendants.''

The instruction is obviously intended as a ''sole cause'' instruction, and appellant insists that there is no evidence in the record warranting the giving of a ''sole cause'' instruction, however proper its form. It is true that under the humanitarian doctrine, in the form it assumes in this State, contributory negligence is no defense. Some negligence on the part of the plaintiff is assumed. But the plaintiff's position is that the defendant driver could have seen, by the exercise of the required degree of care, that plaintiff was in a position of peril, produced or contributed to by plaintiff's own negligence, in time, through the use of the means and instrumentalities then at hand and without increasing the danger to the defendants, to have avoided the accident. Now if there be evidence which tends to negate these essential requirements of plaintiff's humanitarian case, to-wit: that the defendant driver could have seen plaintiff's position of peril, or that after defendant driver could have seen it she could have avoided the accident, so that the plaintiff's negligence may be considered not simply as a contributing factor but as the sole legal cause of the accident, defendants are entitled to a verdict upon that ground; and, being entitled to defend upon that ground, the defendants should have an instruction stating their theory of defense to the jury. Such has been the law of this State since Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373. [See also McGrath v. Meyers, 341 Mo. 412, 107 S. W. (2d) 792.]

Was there evidence here warranting such an instruction? Appellant says that on the admitted facts Mrs. Russell could have seen his position of peril in time to have warned him by sounding her horn or to have swerved to the right and thus avoided the accident. But by respondents' evidence appellant emerged into the street just twelve feet in front of the Russell car which was traveling fifteen miles per hour. If Mrs. Russell is to be believed—and the jury had a right to accept her story and reject that of appellant if they saw fit—she had only half a second in which to act. Clearly this would

have been insufficient to give an effective warning of the horn. As to the possibility of swerving to the right: Mrs. Russell says that appellant was approaching from that direction and had she so swerved she would have run the risk of striking him. To determine with accuracy that a slight turn to the right or left would have avoided the collision would require an almost mathematically exact gauging of the speed and relative positions of the automobile and the appellant. Certainly a driver even in the exercise of the highest degree of care humanly possible could not be expected to accurately make such a calculation and to act upon it in an emergency where action of some kind was required in a fraction of a second. Of course on these matters appellant's evidence strongly contradicts that of the respondents; but in passing upon the propriety of giving this instruction we are not called upon to weigh evidence but only to determine whether or not there was any evidence upon which the instruction could be based. We therefore believe that a proper ''sole cause'' instruction might have been given in this case.

Appellant next contends that the ''sole cause'' instruction here given was not in proper form. First it is said the instruction does not expressly negative negligence on the part of respondents. In Dilallo v. Lynch, 340 Mo. 82, 101 S. W. (2d) 7, and McGrath v. Meyers, supra, we have carefully enumerated the essential elements which a ''sole cause'' instruction must contain. ''Such instruction should, in order to avoid confusion and conflict, contain the sole cause provision and what we may term a not due to the negligence of defendant provision as in the Doherty case (Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. (2d) 742), and also a plain direction that contributory negligence is not to be considered in determining recovery under the humanitarian rule.''

Respondents say that this instruction did contain by inference what we have called a ''not due to the negligence of defendant provision,'' in that in its introductory clauses it required the jury to find that ''at all times . . . said automobile was being operated by the highest degree of care.'' Where it would be better to directly and in so many words require the jury to find that the accident was not caused by any negligence of the defendants, the words used do, in substance, require such a finding, since obviously one who is exercising the highest degree of care at all times could not be guilty of negligence.

A more serious objection to the instruction, however, attaches to the following portion thereof, hypothesizing facts on which a verdict for defendants should be found: ''And if you further find and and believe from the evidence that upon seeing plaintiff in a position of imminent peril . . ., the driver of defendants' automobile immediately attempted to stop . . . and if you further find and believe from the evidence that running out into the street and in

front of defendants' automobile in the manner and at the time aforesaid, if you so find, was the sole and direct cause of the accident and plaintiff's injuries, if you so find, . . ., plaintiff cannot recover.'' Under the humanitarian rule Mrs. Russell's duty to use the means and instrumentalities at hand to avoid the accident did not first commence when she saw plaintiff in a position of peril. It commenced when she, by the exercise of proper care, could have so seen him. [Jones v. Chicago, Rock Island & Pacific Railway Co., 341 Mo. 640, 180 S. W. (2d) 94; Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S. W. (2d) 809.] While respondents rely upon Borgstede v. Waldbauer, supra, and contend that their instruction contained all of the elements approved in the instruction in that case, a careful reading of the majority opinion in the Borgstede case shows that the instruction there given was condemned for the following reason: ''This instruction, as quoted, was properly refused, because it authorized a verdict for the defendants, if Waldbauer did not know that deceased was about to walk into the side of his car. The instruction should have read: 'If Waldbauer did not know and by the exercise of the highest degree of care could not have known such fact.' '' This instruction, in its present form, is misleading to the jury. Under it they might well conclude that a verdict for defendants was authorized if Mrs. Russell did not see the plaintiff's position of peril in time to have swerved or taken other steps to avoid the accident, even though they did find that she could have seen plaintiff's position of peril in sufficient time, through the exercise of the highest degree of care. For this reason we hold the instruction to be bad.

It is to be noted that the Borgstede instruction was not in the strict sense a ''sole cause'' instruction, but in reality a converse of the plaintiff's humanitarian instruction. The present instruction is strictly a ''sole cause'' instruction. It does not contain the elements of such an instruction, which, in the McGrath case, supra, we said were essential. In its present form it should not have been given.

For the reasons assigned the judgment must be reversed and the cause remanded to the circuit court for a new trial in conformity with our rulings herein. It is so ordered. All concur.