W. D. SPRINKLE v. PEARL BLACK PONDER.

(Filed 21 March, 1951.)

**1. Evidence § 32—**

G.S. 8-51 does not render incompetent testimony from an interested witness as to transactions with a decedent when such testimony is for and not against the person deriving title or interest from, through or under the deceased person, and therefore it is competent for a defendant to testify to the effect that deceased grantee, under whom she claims, performed certain acts as consideration for the deed.

**2. Frauds, Statute of, § 9—**

Testimony to the effect that grantee in an executed deed gave valuable consideration therefor, offered for the purpose of showing that it was not a deed of gift, is not incompetent under the statute of frauds, since the statute applies to executory and not executed contracts.　G.S. 22-2.

**3. Husband and Wife § 4a—**

Where there is no evidence that the husband acted unreasonably in choosing the domicile or that the home chosen was inimical to the wife's health, welfare and safety, her consent to go and live with him at the domicile cannot constitute consideration moving from her to him, since in such instance it is the wife's marital duty to go with him to the home of his choice, and as a matter of sound public policy the law will not permit it to be made the subject of contract.

**4. Husband and Wife § 12c: Deeds § 6—**

Ordinarily the performance by a married woman of her agreement to help her husband build the home and other buildings and contribute from her separate estate for the cost of erection, is a valuable consideration which supports his deed to her for one-half interest in the land, but where the evidence tends to show only her executory contract to do so, without any evidence tending to show performance by her, it is without probative force upon the question of consideration.

**5. Husband and Wife § 12b—**

Performance by the wife of work and labor beyond the scope of her usual household and marital duties, such as working in the fields, making rugs, etc., may entitle her in proper cases to compensation therefor provided there is a special contract to that effect between them; but in the absence of a special contract such services are presumed to have been gratuitous.

**6. Same: Deeds § 6—**

An instruction to the effect that the wife's performance of work and labor outside the scope of her usual household and marital duties would constitute a valuable consideration for the husband's deed to her of one-half interest in the property, must be held for prejudicial error where there is neither allegation nor proof of any special agreement between them designating for compensation such extra services rendered by the wife.

**7. Contracts § 4—**

To constitute a valid contract, the parties must assent to the same thing in the same sense.

**8. Deeds § 6: Evidence § 25—**

In the husband's action to declare a deed to his wife void on the ground that it was a deed of gift not registered within two years after its execution, G.S. 47-26, evidence that defendant, who was plaintiff's step-daughter claiming as heir of her mother, performed work and labor in plaintiff's home and on his farm while a member of his household, held improperly admitted in evidence, since it is not relevant or material to the issue as to whether the deed to the wife was supported by valuable consideration moving from her to the plaintiff, there being no evidence that the mother contributed the child's services as part of the consideration for the deed.

**9. Same—Evidence which does not tend to establish the primary fact in issue by any logical inference is irrelevant and incompetent.**

In plaintiff's action to have declared void his deed to his wife on the ground that it was a deed of gift not registered within two years of its execution, instituted against one of his two step-daughters claiming as heir of plaintiff's wife, defendant introduced evidence that plaintiff had paid his other step-daughter between $300 and $400 for her interest in the land.    The evidence showed the land was worth from $7,000 to $18,000. *Held:* The payment of the nominal sum was a collateral transaction *inter alios acta* and is irrelevant to the issue as to whether the wife furnished valuable consideration for the deed, since it does not tend to establish this primary fact by any logical inference, and its admission must be held prejudicial when the charge states defendant's contention that the transaction showed that the plaintiff thereby recognized as valid his deed to his wife and tended to show that it was supported by a valid consideration.

**10. Appeal and Error § 40f—**

Where the refusal of a motion to strike certain allegations from the adverse party's pleading is not appealable, movant may preserve his exception and on his appeal from final judgment the exception will be sustained when the matter sought to be stricken is irrelevant to the issue involved in the case.    G.S. 1-153.

APPEAL by plaintiff from *Rousseau, J.,* and a jury, at the Regular December Civil Term, 1950, of BUNCOMBE.

Civil action to remove an alleged cloud from the title to land by having a deed made by the plaintiff to his wife, Macie Black Sprinkle, now deceased, declared void as a deed of gift not registered within two years

SPRINKLE *v.* PONDER.

after its date of execution as required by G.S. 47-26. The following issue was submitted to and answered by the jury as indicated:

"Was the deed executed by W. D. Sprinkle on October 24, 1945, to his wife, Macie Sprinkle, a deed of gift?"    Ans.: "No."

From judgment on the verdict, the plaintiff appealed, assigning errors.

*Carl R. Stuart and Smathers & Meekins for plaintiff, appellant.*
*Don C. Young for defendant, appellee.*

JOHNSON, J. At the time of the marriage between the plaintiff and Macie Black Sprinkle in 1927, she was living with her two daughters, Pearl (who is the defendant, Pearl Black Ponder) and Alice (now Alice Bradley) in the home of her aunt Nan Black, referred to throughout the trial as Aunt Nan, on the aunt's farm located on the New Stock Road near Weaverville in Buncombe County. The plaintiff, W. D. Sprinkle, "was batching" on his 75-acre farm across the road from Aunt Nan's place. After the marriage, he moved in with the family at Aunt Nan's home, and stayed there two or three years. During this period he sold his farm across the road and, with a view of moving his residence, erected a dwelling and made other improvements on another place owned by him on Flat Creek about three miles from Aunt Nan's place.

In 1929 the daughter Alice married Alfred Bradley, and soon thereafter the plaintiff and his wife left Aunt Nan's place and moved to the new house which had been erected by the plaintiff on his Flat Creek farm. Along with them went Mrs. Sprinkle's daughter Pearl. Aunt Nan died in 1935, leaving her place to plaintiff's wife. On 24 October, 1945, the plaintiff executed and delivered to his wife a deed for a one-half undivided interest in his Flat Creek place, and thereafter she retained possession of the deed at all times until her death on 9 May, 1948. However, the deed was not registered until 22 June, 1949. No child was born of the marriage between the plaintiff and Macie Black Sprinkle. She died intestate, being survived by her two children, Pearl and Alice, her only heirs-at-law.

Plaintiff alleges in his complaint that the original deed to his wife for a one-half undivided interest in the Flat Creek farm was "a deed of gift, without consideration, moving from the grantee to the grantor," and not having been registered within two years after "the making thereof" is void under the statute, G.S. 47-26, and that the defendant's claim to a one-fourth interest in the land is a cloud on his title and should be removed.

The defendant filed answer denying that the deed was a deed of gift. She affirmatively alleges by way of further defense that her mother assisted plaintiff in the construction of the home and other buildings on

the Flat Creek place; that she helped him work on the buildings and also put therein "all of the income received from her individual property" . . . under a special contract that the plaintiff would recompense her by conveying to her a one-half interest in the Flat Creek farm.

The plaintiff rested his case after offering testimony tending to show admissions made by Mrs. Sprinkle to the effect that the deed to her was a deed of gift without valuable consideration. The defendant did not move for nonsuit, but assumed the burden of going forward with her affirmative defense that the deed was made to her mother in fulfillment of a special contract as alleged.

The defendant offered in evidence, over objections of the plaintiff, the following testimony of her sister, Alice Bradley, concerning a conversation which the witness said she heard between the plaintiff and her mother before they moved to Flat Creek:

"Q. What was the conversation between them?

"Objection—overruled—exception.

"A. All I heard she didn't want much to go over to Flat Creek.

"Q. Who didn't?

"A. Mama didn't want to go over to Flat Creek and move there and so she said she would go if he would fix the deed that she would have her share.

"Motion to strike out the answer.

"Q. I will ask you what did Mr. Sprinkle say if she would do that he would do? What did he ask your mother to do and what did she tell him that she would do if he would do certain things?

"Objection—overruled—exception.

"A. He told her that if she would come over there he would invey her an interest.

"Q. You mean convey?

"A. Yes.

"Q. What interest, how much of the land?

"Objection by plaintiff to this testimony.

"Overruled. Exception.

"A. One-half.

"Q. What did he ask your mother to do?

"Objection—overruled—exception.

"A. He asked her to go along and help him work and build a home and all and he would fix it so she could have half of it.

"Objection—overruled—exception.

"Q. When he told her that if she would move over there and help him build a home and live there, did she agree to do that?

"Objection—overruled—exception.

"A. Yes. She agreed to go and went.

"Q. What did your mother say as to whether or not she wanted to move there?

"Objection—overruled—exception.

"A. She didn't want to move and work and build barns and houses and things on the place and help keep the place up and not get any of it and unless he would convey her half of it.

"Motion to strike; denied; exception."

The plaintiff does not challenge the form of the foregoing testimony. Hence we pass the question of whether some of the answers amount to conclusions of the witness tending to invade the province of the jury. First, the plaintiff contends that the testimony should have been excluded as coming from "an interested witness" under the "dead man" statute, G.S. 8-51. This contention, however, cannot be sustained. Here, the defendant's witness was testifying for, rather than against, the "person deriving . . . title or interest from, through or under a deceased person." Such testimony does not come within the inhibitions of the statute. *Bonner v. Stotesbury,* 139 N.C. 3, 51 S.E. 781. Evidence of this kind simply "opens the door" and permits the other party,—the living party to the transaction or communication,—to go upon the stand, if he so desires, and give his version of what transpired. *Batten v. Aycock,* 224 N.C. 225, 29 S.E. 2d 739; *Lewis v. Mitchell,* 200 N.C. 652, 158 S.E. 183; *Herring v. Ipock,* 187 N.C. 459, 121 S.E. 758; *Sumner v. Candler,* 92 N.C. 634. The plaintiff also contends that the foregoing testimony of Alice Bradley, tending to set up a parol contract to convey land, should have been excluded under the statute of frauds, G.S. 22-2, raised by the plaintiff's general denial of the contract (*Henry v. Hilliard,* 155 N.C., 372, 71 S.E. 439). This contention, likewise, is untenable for the reason that here the contract, if such there was, had been executed, and the statute of frauds does not apply to executed contracts; it can be invoked only to prevent the enforcement of executory contracts. *McManus v. Tarleton,* 126 N.C. 790, 36 S.E. 338; *Hall v. Fisher,* 126 N.C. 205, 35 S.E. 425; *Keith v. Kennedy,* 194 N.C. 784, 140 S.E. 721; *Davis v. Harris,* 178 N.C. 24, 100 S.E. 111.

However, further analysis of the testimony of Alice Bradley indicates that it tends to establish between plaintiff and his wife two separate contractual obligations to be performed by the wife as the consideration supporting the deed later made to her, namely: (1) that she forego her desire to remain in the home of her Aunt Nan Black and go live with her husband at his new home on Flat Creek, and (2) that she help him work on and build the house and barns and other buildings on the Flat Creek place and contribute to the costs thereof from her separate estate.

As to the first contractual provision,—the one under which the wife promised to go live with the husband at his new home,—it is fixed law

that any such contract, attempting to make an ordinary marital duty the subject of commerce, is void as against public policy. The "authority of the husband as the head of the family gives him the right, acting reasonably, to . . . determine where . . . the home of the family shall be, and thus to establish the matrimonial and family domicile." 26 Am. Jur., Husband and Wife, sec. 10, p. 638, *et seq.* As long as the husband exercises this choice in a reasonable manner, consistent with the comfort, welfare and safety of his wife, it would seem to be the wife's marital duty to go with the husband to the home of his choice (41 C.J.S., Husband and Wife, sec. 10, p. 399), and this being so, the law will not permit, as a matter of sound public policy, any such marital duty to be made the subject of "barter and sale," and a contract based thereon is a nullity, without consideration. See *Ritchie v. White,* 225 N.C. 450, 35 S.E. 2d 414, 26 Am. Jur., Husband and Wife, sec. 326, p. 923, *et seq.* In the trial below, there was no evidence tending to show that the plaintiff acted unreasonably in choosing the Flat Creek farm as a family home, nor does it appear that the home there provided for the family was inimical to the health, welfare and safety of the wife. Therefore, any agreement of the wife to accompany the plaintiff to the Flat Creek place, and her act in doing so, furnished no supporting consideration for the deed he made to her fourteen or fifteen years later. It follows that the evidence in respect to such contract, admitted over plaintiff's objection, should have been excluded.

As to the second contractual provision set up by the testimony of Alice Bradley,—the provision under which the plaintiff's wife is alleged to have obligated to help him work on and build the home and other buildings and contribute from her separate estate to the costs of erection,—it is enough to say that ordinarily the performance by a married woman of any such contract, calling for contributions from her separate estate and requiring the performance of work above and beyond the pale of her ordinary household and domestic duties, is deemed to be supported by a valuable consideration and is valid and enforceable. *Ritchie v. White, supra* (225 N.C. 450, p. 455, 35 S.E. 2d 414) ; *Dorsett v. Dorsett,* 183 N.C. 354, 111 S.E. 541. However, in the instant case an analysis of the record discloses no testimony tending to show performance of this provision of the alleged contract. There is no evidence that the plaintiff's wife performed labor of any kind in connection with the erection of the buildings, or that she contributed any money or anything of value from her separate estate toward the costs of erecting the buildings. It also appears that the plaintiff's wife had no separate estate of substance until her Aunt Nan died leaving her the old home place on the New Stock Road. This was several years after all of the buildings, except perhaps a burley barn, had been erected on the Flat Creek farm. Accordingly,

the record discloses that at this stage of the trial below there was testimony tending to establish a valid executory contract by which the wife was to work and assist in the erection of the buildings, the performance of which by the wife would have furnished evidence of a valuable consideration in support of the deed later made to her by the plaintiff; but the record discloses no evidence tending to show performance by the wife. Therefore the alleged contract falls by its own weight and furnishes no consideration tending to support the deed to the wife. This being so, the mere admission in evidence of the testimony of the witness Alice Bradley in respect to the executory contract, which on this record never became executed by the wife's performance, standing alone, was not error. The harm that came to the plaintiff was in the manner in which the jury were instructed to consider other phases of the evidence showing that the wife performed extra work and labor in the home and on the farm, perhaps above and beyond the scope of her usual domestic and marital duties, and which might have been, but were not in the instant case, the subject of a special contract for payment.

Falling in this category was evidence that in addition to the performance of her usual household duties, the wife "worked tobacco, cut tobacco and helped make it, and made rugs, and milked cows and sold milk," and did "work in the corn fields and cut tops and everything; and helped make molasses."

The performance of such outside work by a married woman may in proper cases entitle her to compensation therefor, but only when there is a special contract to that effect between the husband and the wife. In the absence of a special contract, such services are presumed to have been gratuitously performed. *Dorsett v. Dorsett, supra* (183 N.C. 354, 111 S.E. 541). Nevertheless, the court instructed the jury, among other things, as follows:

"If you find that she rendered services under and by virtue of a contract, that is a meeting of the plaintiff's mind and his wife's mind, whereby the plaintiff agreed and the wife agreed, based upon the consideration that she leave her home and go to his home and help him build a home, build buildings, cultivate the land, work in the fields and help him, and if you find those facts, and if she did enough to make a valuable, fair, reasonable price for this one-fourth interest in this land or this one-half interest in this land—she got one-half—then that would be a valuable consideration."

The foregoing instruction necessarily must have led the jury to the erroneous belief that the contract between the plaintiff and his wife, as related by the witness Alice Bradley, was valid in its entirety, including the stipulation under which the wife allegedly yielded her desire to remain at her old home and went with her husband to his new home on Flat

Creek. This instruction also was calculated to lead the, jury to believe that the outside work performed by the wife in the fields was included in the contract; whereas, there is neither allegation nor proof of any special contractual provision singling out and designating for compensation these extra services rendered by the wife in the fields. As to this, the testimony below discloses no meeting of the minds of the parties. To constitute a valid contract the parties must assent to the same thing in the same sense. *Elks v. Insurance Co.,* 159 N.C. 619, 75 S.E. 808; *Dodds v. Trust Co.,* 205 N.C. 153, 170 S.E. 652. Where there is such uncertainty that it cannot be known what is contracted for, the contract is unenforceable. *Thomas v. Shooting Club,* 123 N.C. 285, 31 S.E. 654; *Holder v. Mortgage Co.,* 214 N.C. 128, 198 S.E. 589; *Williamson v. Miller,* 231 N.C. 722, 58 S.E. 2d 743.

Another assignment of error urged by the plaintiff is based on his exception to the admission of evidence as to work and labor performed by the defendant in plaintiff's home and on his farm while she was a member of his household. The defendant's sister, Alice Bradley, was permitted to testify as follows:

"Q. What work, if any, did you see her doing on the place?

"Objection—overruled—exception.

"A. She worked in the field . . .

"THE COURT: (interrupting) : You put up a witness to show what the plaintiff did.

"Objection—overruled—exception.

"A. Pearl worked on the farm until she went and worked at the market. She helped make rugs and helped in the tobacco fields and helped to raise tobacco and worked in the fields and helped Mama milk and mind the cows.

"Motion to strike; denied; exception."

This evidence was not relevant or material to the issue in the case. Here, the single question involved is whether the deed to Macie Sprinkle is supported by a valuable consideration, moving from her to the plaintiff, and the theory of the case excludes any suggestion that the mother contributed the child's services to the plaintiff as part of the consideration for the deed. The inadvertence of the court below in admitting this extraneous evidence must be held as error (*Pettiford v. Mayo,* 117 N.C. 27, 23 S.E. 252; *Cuthrell v. Greene,* 229 N.C. 475, 50 S.E. 2d 525), especially so in view of the interposed comment of the court which likely gave emphasis to its importance. See *Harris v. Draper, ante,* 221.

Since the case goes back for a new trial, we deem it advisable to discuss another group of exceptive assignments of error,—the exceptions dealing with the defendant's evidence tending to show that a short time before the commencemnt of this action the plaintiff purchased from the defendant's

sister, Alice Bradley, the one-fourth interest she claimed in the lands in controversy. This evidence apparently was admitted on the theory that the action of the plaintiff in procuring the deed from Alice Bradley and paying her a valuable consideration therefor was a circumstance tending to show that the plaintiff's original deed to his wife was supported by a valuable consideration. However, we are constrained to the view that no such conclusion may be logically deduced from this transaction. Three witnesses testified as to the value of the tract of land in controversy in 1945. Their opinions ranged as follows: $7,000 or $8,000; $12,000; and $18,000. The challenged evidence indicates that the plaintiff, twenty days before the commencement of this action in 1949, accepted and put to record a deed from Alice Bradley for the one-fourth interest she claimed in the lands, and paid her therefor only the sum of $200, plus the release of a debt of $130 owed him by her. Tested by the fundamental principles of relevancy and natural logic which govern the admissibility of evidence, it would seem that the most logical conclusion to be drawn from the plaintiff's transaction with Alice Bradley is that he was only "buying his peace." At most, it was a collateral transaction with a third party involving a compromise settlement for a sum scarcely more than it would have cost to litigate the claim. In 20 Am. Jur., Evidence, sec. 248, p. 242, we find this concise statement of the rules governing the test of relevancy and materiality in the admission of evidence: "It is fundamental that evidence to be admissible must relate and be confined to the matter or matters in issue in the case at bar and must tend to prove or disprove these matters or be pertinent thereto, or, to put it another way, the proof must correspond to the issues raised by the pleadings. This rule excludes evidence of collateral facts or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute—those which are remote, collateral, and irrelevant." See also *Shepherd v. Lumber Co.,* 166 N.C. 130, 81 S.E. 1064. Tested by the foregoing rules, the evidence that the plaintiff, four years after his wife's death, settled the other daughter's similar claim for a nominal sum would seem to be entirely irrelevant to the issue sought to be proved by the transaction and *res inter alios acta.* 1 Taylor on Evidence, secs. 317 and 318, p. 229 *et seq.* and notes p. 257[1]. Nothing else appearing, we might treat the evidence of this transaction as inconsequential, and perhaps as having been more helpful than hurtful to the plaintiff's cause, as tending to show an admitted weakness on the defendant side in settling a similar claim for such trivial sum. But not so in the light of the following instructions given the jury.

"The defendant argues that when the mother of this defendant died leaving this defendant and Alice Bradley then there were only two heirs to Macey Black Sprinkle, that that was this defendant and Alice Bradley

and that then they inherited this particular tract of land as tenants in common and that this plaintiff himself recognized that that deed was good, that he had made to his wife because he purchased from Alice Bradley, the sister of this defendant and daughter of his wife her one-fourth interest; that he paid her $200.00 cash and paid off a debt of $130; that he recognized then and there that the deed he had made his wife was good because he purchased from this one sister" . . .

"Defendant argues that this evidence that he bought from Alice Bradley is some evidence of valuable consideration that the wife paid to him and the court charges you that you may consider that testimony of this deed made by Alice Bradley to this plaintiff as some evidence of a valuable consideration, that he recognized that there was some valuable consideration. These are all matters for you."

It would seem that the above instructions must have weighed too heavily against the plaintiff. His exceptions to these instructions must be sustained.

It also appears that when the case was called for trial the plaintiff moved to strike from the defendant's further defense the allegations in respect to the deed from Alice Bradley to the·plaintiff. The motion was overruled. The plaintiff's exception then noted, while not appealable at that time (*Parrish v. R. R.,* 221 N.C. 292, bot. p. 292 and top p. 293, 20 S.E. 2d 299), has been properly preserved and brought forward for review, as is the plaintiff's right. *Fayetteville v. Distributing Co.,* 216 N.C. 596, 5 S.E. 2d 838. The exception is sustained as to paragraph six of the defendant's further defense, which will be stricken, as being irrelevant to the issue involved in the case. G.S. 1-153. *Patterson v. R. R.,* 214 N.C. 38, 198 S.E. 364.

Since the case goes back for a new trial, we deem it unnecessary to review the rest of the plaintiff's assignments of error. For the reasons stated, the plaintiff is entitled to another hearing, and it is so ordered.

New trial.