ALEXANDER POOL COMPANY, INC. *v.* PEVEY

No. 42649 April 22, 1963 152 So. 2d 451

*Morse & Morse,* Gulfport, for appellant.

*Floyd & Holleman, Clyde O. Hurlbert,* Gulfport, for appellee.

Rodgers, J.

This case has been previously presented to this Court on appeal and is reported in 244 Miss. 25, 139 So. 2d 847. It is a damage suit for personal injuries caused by escaping chlorine gas, from a chlorinator, alleged to have been negligently installed by appellant.

On the second trial in the Circuit Court of Harrison County, the jury returned a verdict in favor of appellee, Eldon H. Pevey, in the sum of $25,000.

Defendant, Alexander Pool Company, Inc., has appealed and argues the following errors alleged to have occurred in the trial court: (1) The court erred in refusing to permit defendant to show that Eldon Pevey, plaintiff, compromised his workmen's compensation claim for less than the amount due him. (2) The court erred in granting an instruction for plaintiff. (3) The verdict of the jury was contrary to the law, and the evidence. (4) The verdict was so excessive as to evince passion and prejudice on the part of the jury.

The Alexander Pool Co., Inc., installed a chlorinator and attached it to a filtering system for a swimming pool. The pool belonged to a large tourist hotel known as the Sun-N-Sand. The swimming pool filter system and

chlorinator here involved were located on the north side of U. S. Highway 90. The appellant had previously installed a similar chlorinator for the hotel, Sun-N-Sand, on the south side of the highway, for use in another pool.

Appellee was employed as an assistant engineer, and his duties were to assist the chief engineer in maintaining the equipment for the hotel, including the operation of the filters and chlorinators used in both swimming pools. Appellant finished installation of the chlorinator on the north side of the highway at a time when appellee Pevey was "off" (away from work.) The next day (May 27, 1960) appellant was instructed to check the chlorine in the water in the north pool. The chief engineer advised appellee that the two chlorinators were similar and were operated in a like manner. Appellee examined the water in the pool and found that it needed additional chlorine and in compliance with his instructions, he entered the small filter house in which the filter and chlorinator had been installed the previous day. He observed the various valves to determine whether or not they were all open and operating. He then began adjusting a needle valve which controlled the induction of chlorine gas into a glass mixing tube, and thence into the water entering the pool through the exhaust pipe of the filtering system.

Appellee turned the needle valve one and one-half rounds when suddenly it came apart, permitting deadly toxic chlorine gas to spew into his face. He ran out of the house, but realizing the danger to others, he put a hankerchief over his face and reentered the house and turned off the main valve to the chlorine tank. He breathed so much chlorine he became semi-conscious and was disabled. He was immediately taken to the Veterans Hospital where he remained for five days. He then returned to the hotel and tried to work two days, but had to go to the Memorial Hospital for a period of eight

days. He then returned to light duty at the hotel for the rest of the summer. On the following January 13, 1961, he was ''laid off'' (released) because he was physically unable to do the work.

Testimony offered by plaintiff shows that the chlorinator was improperly installed. The intake line to the chlorinator was attached to the suction side of the pump, and the exhaust line was attached to the return line going into the pool. It was shown that the safety valve on the chlorinator would not permit chlorine to enter the mixing tube because there was not sufficient pressure from the water line to open the safety valve. In short, the chlorinator intake on the suction side of the pump reversed the path of the water and prevented the opening of the safety valve and the operation of the chlorinator.

The testimony on behalf of appellee also showed that after the accident, appellant changed the installation of the system twice, and finally attached the chlorinator to the fresh water system of the hotel. Since that time, the chlorinator has functioned without incident.

Appellant argues on appeal that the appellee ''was injured by chlorine gas when he attempted to activate a chlorinator at a swimming pool'', that ''he was thoroughly familiar with the apparatus he sought to control''; that the chlorinator had worked before the accident and that it would have worked after the accident; therefore appellee is alleged to be seeking damages because of his own acts in screwing the cap off the valve, releasing chlorine gas, all of which was without negligence on the part of appellant.

On the other hand, appellee contends that he was instructed to turn the needle valve not more than two turns whenever it was found that the water in the pool needed additional chlorination. He did as instructed and the needle valve came apart, permitting chlorine to escape; that since he only turned the valve one and one-half rounds, it had necessarily been left unscrewed

so as to permit it to come apart when it had been opened only one and one-half times, and that appellant's servant left the valve so that it would come apart.

Appellee offered proof to show the reason that it became necessary for him to open the needle valve was because the chlorinator did not operate properly, due to negligence and faulty installation of the equipment by appellant. In short, the act appellee was expected to perform in the operation of the chlorinator, triggered the result that might have been reasonably anticipated by servants of appellant who installed the chlorinator and left it in a condition imminently dangerous to persons who were expected to use it.

■■ ■ During the trial of the case, the defendant (appellant here) sought to show that appellee had compromised his workmen's compensation claim for about one-third of the amount actually due him. The refusal of the trial court to permit introduction of this evidence is said to be reversible error, because such a settlement is alleged to be an admission against interest in that it indicated that appellee was not in fact totally and permanently disabled.

Appellant cites no authority for its contention. Appellee, however, cites 31 C. J. S., Evidence, Sec. 292, p. 1055, wherein it is said: "A settlement between a party and a third person cannot be shown, even though it relates to the matters involved in the action, and the person with whom the compromise was made was in the same position as the party seeking to show such settlement."

Appellee argues that the admission of such testimony could only have for its purpose the mitigation of damages, and that this Court has refused to permit introduction of evidence to show how much was received in workmen's compensation cases to mitigate damages in a personal injury suit. Citing Coker v. Five-Two Taxi Service, Inc., 211 Miss. 820, 52 So. 2d 356.

We have not been shown authorities on the precise question here presented, as to whether or not the settlement of a workmen's compensation claim may be introduced as an admission that such claim was settled for less than a total disability. The general rule may be found in 20 Am. Jur., Evidence, Sec. 562, p. 475; and is expressed in 31 C.J.S., Evidence, Sec. 291, p. 1050, as follows: "Where a party on the trial of an action advances contentions which are inconsistent with his prior conduct with relation to the matter in controversy, such prior conduct may be shown as being in the nature of an admission. * * *" This authority on the other hand also states: "However, the mere failure to claim under insurance policies is not, as against the person inflicting the injuries, an admission that no injuries were suffered, and the employee's failure to file a compensation claim is not, as against persons causing the injury, an admission of the termination of disability, particularly where the remedy against the persons causing the injury has been vigorously pursued." The following cases are cited under the Notes of the foregoing section.

In the case of Brown v. Payne (Mo. 1954), 264 S. W. 2d 341, the trial court permitted the introduction of evidence to show that the plaintiff in a personal injury suit did not file a claim for workmen's compensation, and on appeal, the appellate court said: "It is not necessary to say whether the evidence was admissible for any purpose, Reiling v. Russell, 345 Mo. 517, 522-523, 134 S.W. 2d 33, 36, it was collateral and did not constitute an admission that she was not injured in the collision, Hilton v. Thompson, 360 Mo. 177, 191-192, 227 S. W. 2d 675, 681-682, and, we might add, does not constitute a defense to this action."

In the case of Reiling v. Russell, et al., (Mo. 1939), 134 S. W. 2d 33, the Court pointed out that the fact that insurer of employer of plaintiff stopped paying plain-

tiff's compensation in about fifteen weeks was not evidence in a personal injury action, of an admission on plaintiff's part that his disability had ceased.

Cherry-Burrell Company v. Thatcher, 107 Fed. 2d 65, is a case where the plaintiff filed suit for personal injuries growing out of an automobile accident. The defendant offered to show that plaintiff had health and accident insurance and that he made no claim for benefits because of the accident, and the Court said: "The mere fact that appellee made no claim for the injuries on insurance companies fails to prove that the accident did not happen. We know of no reason why appellee could not, if he wished, waive his claim against the insurance companies and pursue appellants."

From the foregoing we conclude that the testimony offered by appellant to show that the appellee settled his workmen's compensation claim was not relevent as an admission against interest on the issue of whether or not the appellee was totally disabled by the accident.

Appellant complains that the following instruction is erroneous, and should not have been granted by the trial judge: "The court instructs the jury for the plaintiff that if you believe from a preponderance of the evidence in this case that the defendant negligently installed the chlorinator system involved in this case by making improper connections to the water supply input to the chlorinator system, if so it did, and if you further believe from a preponderance of the evidence that the negligence aforesaid, if any, of the defendant in installing the chlorinator system proximately caused or contributed to the accident and injuries sustained by the plaintiff, then it is your sworn duty to bring in a verdict for the plaintiff." Appellant contends that this instruction is at variance with the allegations of the declaration with reference to the cause of the accident, and said "That theory is a complete departure from the allegations of the declaration." It is argued that on the day

of the injury the appellee turned the needle valve one and one-half turns, permitting the cap on the valve to come off, and that there is no evidence to show appellant's employees left the needle valve in that position. It is asserted that the cause of the accident was not the malfunctioning of the chlorinator system or the manner of its installation, but that the accident was brought about by the fact that the needle valve was unscrewed to a point where one and one-half turns permitted it to come apart.

 The foregoing argument overlooks the fact that the jury could reasonably find that the accident grew out of several causes; that the faulty installation of the chlorinator prevented it from properly injecting chlorine into the pool water; that in order to get more chlorination it was necessary to manipulate the needle valve, and that this valve came apart, because it had been left unscrewed by employees of appellant. This argument also overlooks the fact that only two persons at the Sun-N-Sand had a key to the locked filter house where the chlorinator was installed and that appellee was the only one to enter the building after its installation. [1]

Appellant also argues this instruction permitted the jury to award damages without regard to the condition of the needle valve. We do not believe this argument is tenable for the following reasons:

(a) We are of the opinion that the language used in the declaration is sufficient to allege that the proxi-

[1] This Court has repeatedly held that the proximate cause of an injury, or the causal connection between an agency and an injury complained of may be shown by circumstantial evidence. Fowler Butane Gas Company v. Varner, 244 Miss. 130, 141 So. 2d 226; Tombigbee Electric Power Association v. Gandy, 216 Miss. 444, 62 So. 2d 567; Matthews v. Thompson, 231 Miss. 258, 95 So. 2d 438; Turnipseed v. McGee, Exec., 236 Miss. 159, 109 So. 2d 551. See also: Haynes v. Graves, 215 Miss. 353, 60 So. 2d 812; 38 Am. Jur., Negligence, Sec. 334, p. 1033; 65 C. J. S., Negligence, Sec. 244, p. 1090; 20 Am. Jur., Evidence, Sec. 272, p. 259.

mate cause of the accident was brought about by the faulty installation of the chlorinator, including the fact that the needle valve was installed in such a condition as to permit it to come apart while being operated in a proper manner.

■■ ■ (b) We will not reverse the judgment of the trial court because of a variance in the allegations in the declaration and the proof offered, unless an objection is seasonably made in the trial court, and this was not done in this case. See Sec. 1512, Miss. Code 1942, Rec. Moreover, the statute of jeofails, Sec. 1544, Miss. Code 1942, Rec., does not permit the reversal of a judgment, after verdict, for a defect in the form of the declaration.

■■ ■ The instruction was in accord with the testimony introduced, and since there was no objection to the alleged variance of the declaration and the proof, this Court will not entertain such an objection on appeal.

It is next contended by appellant that the testimony introduced was insufficient to present a jury issue, and for that reason the trial court should have directed a verdict for the appellant, and having failed so to do, the court should have granted a judgment in favor of appellant, notwithstanding the verdict.

This argument is based upon the thesis that the appellee caused his injury by simply screwing the cap off of the needle valve and thus releasing the deadly chlorine gas, and that this result was brought about without fault on the part of the employees of Alexander Pool Co., Inc. In support of this premise, appellant cites the case of City of Long Beach v. Spooner, 224 Miss. 246, 79 So. 2d 833, in which this Court pointed out that there was no negligence shown on the part of the city in furnishing a garbage truck alleged to have been of faulty construction, when the injury was caused by the plaintiff who "knowingly placed himself in a position of obvious and manifest danger, and his negligence was the sole proximate cause of his injury."

■■■ The foregoing case is not applicable to the facts in the instant case for several reasons, the most obvious one being that Mr. Pevey did exactly as he was required and expected to do in the proper operation of the chlorinator when it was not ejecting sufficient chlorine into the water in the pool. There is nothing in this record to show any negligence on the part of Mr. Pevey, except perhaps a conjecture or speculation that he might have continued screwing the valve more times than he testified about, and for that reason it came apart. We think the issue of negligence was clearly a question for the jury, and was properly submitted to it under the facts of the case.

Finally, appellant contends that the verdict of the jury is so excessive as to shock the conscience of the court and to evince passion and prejudice on the part of the jury, and argues that this case should be reversed or materially reduced by requiring a remittitur for that reason.

■■ ■ Dr. Kendall Gregory, a specialist in internal medicine, testified on behalf of appellee. The doctor has had previous experience with victims of chlorine gas poisoning of combat soldiers gassed by the Germans in World War I. He had taken numerous X-ray pictures of Mr. Pevey and some of these pictures are in this record. The doctor testified that the plaintiff's measured maximum breathing capacity was one-third of normal. He diagnosed Mr. Pevey's condition as chronic bronchitis, with pulmonary fibrosis, secondary pulmonary emphysema, and ploycythemia, or increased blood count due to the first two diseases. The doctor explained that chlorine gas mixed with a watery secretion became hydrochloric acid, a substance destructive of human tissue. He testified that the appellee's condition was permanent, progressive and totally disabling. He said: "He is not able to perform any type of manual labor, even

such as walking for a period of over a block without considerable extra effort.''

It is also shown that it is necessary for Mr. Pevey to sleep in a chair in order to avoid strangling upon fluid that collects in his throat during his resting hours.

After having fully considered the testimony in this case with reference to the condition of the appellee, we have come to the conclusion that the verdict is not excessive.

Having found no errors in the trial of this case, the judgment of the lower court should be and is affirmed.

Affirmed.

*Lee, P. J., and Arrington, McElroy and Jones, JJ.,* concur.