Josephine M. **PULVARI**, Appellant,

v.

**GREYHOUND CORPORATION,**
Appellee.

No. 20321.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 3, 1967.

Decided Feb. 16, 1967.

Tamm, Circuit Judge, dissented.

Mr. William A. Mann, Washington, D. C., for appellant.

Mr. Wilbert McInerney, Washington, D. C., for appellee.

Before FAHY, McGOWAN and TAMM, Circuit Judges.

FAHY, Circuit Judge:

In the District Court appellant, referred to as plaintiff, sued Greyhound Corporation, appellee, defendant, for damages due to injuries received when she was a passenger in one of defendant's buses traveling south toward Washington on the Washington-Baltimore Parkway. This is a four-lane highway. Two lanes are for southbound traffic, well separated from two lanes for northbound traffic.

The accident occurred about 3:30 a. m. in the following circumstances. Traveling directly ahead of the bus in the same direction was a truck. Desiring to pass this truck, the driver of the bus turned it to the left into the eastern of the two southern lanes. An automobile, referred to as the Pontiac, was traveling north in this lane, where it had no right to be. The bus and Pontiac collided. The bus

then appears to have gone out of control. According to the officer investigating the accident, it traveled sixty-four feet farther where it struck an overpass abutment. This was the impact which led to plaintiff's serious injuries.

There was evidence that the driver of the Pontiac was under the influence of alcohol. He and a passenger with him were killed.

█ The theory of plaintiff was that although the Pontiac was traveling north in a southbound lane, Greyhound was concurrently negligent because even if the bus were traveling below the speed limit, as the bus driver testified, its speed was unreasonable in light of the driving conditions. There was considerable testimony as to the weather, including some that it was raining, that the Parkway was foggy in places and the temperature below freezing. Plaintiff offered, unsuccessfully, reports of the United States Weather Bureau concerning contemporaneous weather conditions at Friendship Airport, two miles away.[1]

In cross-examining plaintiff, counsel for Greyhound asked her about three pictures in evidence which showed that she was in a cast. He inquired who suggested taking the pictures. She replied to the effect that it was her former attorney Mr. Jacobs, and that the fees were being divided between him and trial counsel. Defendant's counsel then asked: "On [sic] what other fees did Mr. Jacobs participate in this case?" Counsel for plaintiff objected, urging that the question had "no bearing on this litigation." The court permitted the question to be answered as going "to the relationship between plaintiff and counsel and the circumstances under which this took place." Upon counsel pressing his objection, the court said, "The question is whether Mr. Jacobs had an interest in this case." From further discussion it appears the trial judge intended to admit only transactions with counsel "in con-

nection with this case," yet he also explained that his ruling was liberal in order to permit development of "the whole relationship between the plaintiff and any of her attorneys." The clerk then read the question, "On what other fees did Mr. Jacobs participate in the case?" After the court said that an answer could be given "within the limits that the Court has announced," the following transpired:

The Witness: Well, as far as I can see, Mr. Jacobs already got two thousand and sixteen dollars for his legal advices.

[Defendant's Counsel]:

Q. Who did he get that from? A. That was the Davis case.

Q. It was what? A. It was the two cases were together, the Davis and Greyhound case. It was on file.

Q. And who is Davis? A. The man who died.

Q. In the other car? A. Yes.

Q. And that is where Mr. Jacobs got his fee from that case; is that right? A. Yes, partially, because he billed me for those. I mean everything what he did for the Greyhound investigation he billed me, so I paid to him almost $3,000 for investigation fees, administration, things like that; I don't know.

Q. And that was in connection with a claim against the driver of the other car; is that right? A. Not quite. Both were involved because those—

Plaintiff's counsel interrupted to object again since the testimony referred to had to do with the "Davis case." He requested the court to instruct the jury to disregard this testimony. The court responded that the witness could testify with respect to the case on trial but any claim against the owner of the other car was not involved "in this action"; yet no instruction was given to the jury to disregard the testimony about the "Davis case."

---

1. I think it was error to exclude the Friendship weather reports, since in my opinion they were relevant and material, as well as competent, on the issue of the care required of the bus driver. The majority of the court rule otherwise.

In this manner, over objection, counsel for appellee was permitted to adduce testimony that one of the plaintiff's attorneys had obtained fees in connection with plaintiff's claim against the driver of the other car. This was outside the issues of the case on trial. And if there were any doubt that the purpose of defendant's counsel was to acquaint the jury with the fact that plaintiff had recovered from the estate of the driver of the other car the doubt was removed when in arguing the case to the jury he stated:

> Mrs. Pulvari * * * according to her own testimony, has apparently received some funds or compensation from Mr. Davis' estate in the other car.

At a bench conference at the close of the argument plaintiff's counsel objected to this statement, urged that it was prejudicial and asked the court to instruct the jury to disregard it unless he could tell the jury how much Greyhound got from the Davis estate. The court ended the bench conference by saying, "We will let the matter stand as it is."

The jury found for the defendant.

■ The fact that plaintiff had made a recovery from the estate of the driver of the Pontiac was entirely irrelevant to the issue of defendant's liability. And it was prejudicial to plaintiff because of its tendency to lead the jury to accept the view that the negligence of the Pontiac driver was the sole cause of the injuries to plaintiff, and, also, that plaintiff had already recovered for those injuries. As we said in Martello v. Hawley, 112 U.S.App.D.C. 129, 132, 300 F.2d 721, 724, involving, however, the problem of contribution between joint tortfeasors, but in language here applicable,

> In a case such as the one before us, the jury should not be allowed to know either the fact or the amount of any settlement; such information only tends to mislead them in their deliberations concerning a just compensatory verdict.

■ Where the issue is one of liability these remarks are no less apposite. Sky-

line Cab Co. v. Bradley, 325 S.W.2d 176, 182 (Civ.App.Tex.); San Antonio & A. P. Ry. Co. v. Tucker, 157 S.W. 175 (Civ.App.Tex.). As having a tangential bearing on the question, see, also, Puget Sound Elec. Ry. v. Van Pelt, 168 F. 206 (9th Cir.); Alexander Pool Co. v. Pevey, 247 Miss. 389, 152 So.2d 451; Sprinkle v. Ponder, 233 N.C. 312, 64 S.E.2d 171; Hill v. Hiles, 309 Ill.App. 321, 32 N.E.2d 933. I think the judgment should be reversed and the case remanded.

McGOWAN, Circuit Judge (concurring):

I concur in the judgment of reversal solely because appellee, not content with presenting what would appear to me to have been a substantial case for its nonliability, insisted upon bringing to the jury's attention the fact of a settlement by appellant with another party to the accident. And, when appellant in desperation urged that she at least be permitted to round out the jury's information by acquainting it with the amount of the settlement, appellee succeeded in keeping this out. If appellee thought the evidence was so closely balanced as to compel it to bring out this irrelevant and incomplete circumstance over the pointed and repeated objection of the appellant and under inadequate control by the court, then who am I at this remove to say that it did not color the jury's deliberations?

TAMM, Circuit Judge (dissenting).

I respectfully dissent from the action taken by the majority in this case. Upon the entire record, the evidence is overwhelming that the action of the appellee Greyhound Corporation was in no manner or degree a proximate cause of the appellant's injuries. The trial judge would have been completely justified, upon the basis of appellant's evidence, in granting a motion for a directed verdict in favor of the appellee at the termination of appellant's evidence. From an abundance of caution and guided by the principles which we established for district

court judges in this type of case [1] in interpreting Rule 50, Federal Rules of Civil Procedure, the learned trial judge permitted the case to go to the jury in order that there would be a complete record if appellate review became necessary. I am of the view that it is an utter waste of time to remand the case with this factual background to an overworked trial court for further and ultimately meaningless proceedings. The questions and answers upon which the majority predicates its action are technical trivia when considered against the evidence relating to the proximate cause of the accident.

1. Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 143 F.2d 142 (1944); Williams v. Greenblatt, 106 U.S.App.D.C. 335, 272 F.2d 564 (1959); Smith v. Steward, 110 U.S.App.D.C. 242, 292 F. 2d 735 (1961); see also 5 Moore's Fed. Prac., ¶ 50.03.