ROBERT A. WELSH v. NORTHERN TELECOM, INC.

No. 8614SC272

(Filed 21 April 1987)

1. **Pensions § 1— state action for breach of employment contract—failure to bridge prior service—not preempted by ERISA**

   In an action in which plaintiff claimed that defendant breached his employment contract by not bridging his prior AT&T System service to increase his benefits, the trial court did not err by failing to find that plaintiff's state law claims were preempted by ERISA, 29 U.S.C. § 1001, *et seq.*, where plaintiff had a claim against defendant for amounts in addition to the pension plan benefits; his action was not against the plan but against defendant for failing to uphold its promises to provide benefits in excess of those to which he would otherwise be entitled under the plan; and his claim neither concerned the substance of the pension plan nor the plan's regulation and was only tangential to the plan.

2. **Master and Servant § 8.1— breach of employment contract—failure to bridge prior service—denial of motion to dismiss and judgment n.o.v.—proper**

   The trial court did not err by denying defendant's motion for a directed verdict and judgment n.o.v. in an action arising from defendant's failure to bridge plaintiff's prior AT&T service where there was no dispute as to the type of company benefits that defendant normally offered; defendant admitted in its brief that its vice president's statement concerning company benefits is made intelligible by reference to established company policy or the retirement plan; plaintiff gave an example of bridging as he understood it and as it was operating in the communications employment industry at that time; the testimony of defendant's witnesses at trial did not indicate that there was any confusion as to what the terms bridging and company benefits meant; defense witnesses gave no indication that plaintiff's definition of bridging was incorrect or contrary to their understanding; the only true dispute was whether defendant promised plaintiff that his prior Bell System service would be bridged; and the jury found that defendant's vice president made such a promise.

APPEAL by defendant from *Brannon, Judge*. Judgment entered on 25 October 1985 in Superior Court, DURHAM County. Heard in the Court of Appeals on 28 August 1986.

*Newsom, Graham, Hedrick, Bryson & Kennon by William P. Daniell for plaintiff appellee.*

*Maupin, Taylor, Ellis & Adams by John Turner Williamson, James A. Roberts, III, and Holmes P. Harden for defendant appellant.*

COZORT, Judge.

Plaintiff filed a declaratory judgment action pursuant to G.S. § 1-253, *et seq.* seeking a judicial declaration construing his right to receive certain employment benefits, which plaintiff alleged defendant had contracted to provide him in exchange for plaintiff's working for defendant. From a jury finding of fact in plaintiff's favor, the trial court entered judgment for the plaintiff, and defendant appealed.

On appeal, defendant contends the trial court erred (1) in failing to find that plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") 29 U.S.C. § 1001, *et seq.*; and (2) in denying defendant's motions for directed verdict and judgment notwithstanding the verdict on the grounds that no valid and enforceable contract existed which obligated defendant to "bridge" plaintiff's prior service within the AT&T (Bell) System for purposes of determining the amount of retirement benefits and vacation time to which plaintiff is entitled. We affirm. The facts follow.

Plaintiff testified that he has held various jobs in the communications industry since 1954. For a period of thirteen years and ten months, from November 1954 until September of 1968, he first worked for Bell Telephone Company of Pennsylvania and then for Bell Telephone Company of New Jersey. Both of these companies were subsidiaries of American Telephone and Telegraph Company (AT&T).

During his testimony, plaintiff referred to his employment with Bell Telephone Company of Pennsylvania and Bell Telephone Company of New Jersey as "Bell System service" or service within the "AT&T System." Plaintiff testified that the companies

referred to as the "Bell System" are essentially the same as those which compose the "AT&T System." He further testified that, in the telecommunications industry, the terms "Bell System" and "AT&T" mean essentially the same thing. The Bell System, at one time, consisted of various telephone companies and manufacturing companies throughout North America.

In September of 1968 plaintiff left his job with Bell Telephone Company of New Jersey and accepted employment with Stromberg-Carlson in Rochester, New York, where he remained employed until 30 January 1970. Upon leaving Stromberg-Carlson, he accepted employment with General Telephone Company of Florida in Tampa, Florida. In 1972, plaintiff left General Telephone and went to work for Vista Telephone, also located in Florida. Neither Stromberg-Carlson, General Telephone, nor Vista Telephone were companies within the AT&T System, and none of them had any corporate relationship with AT&T.

In early 1974, while employed by Vista Telephone, plaintiff supervised the installation of certain telephone equipment which was manufactured by Northern Telecom, the defendant in this action. While working on that project, plaintiff met and became known to various employees of defendant. One such employee, Jack Shriner, requested a meeting with the plaintiff in early 1974. At that meeting, Shriner asked plaintiff to come and work for the defendant, but plaintiff was not interested in employment with defendant at that time.

Later in 1974, plaintiff received a telephone call from Gordon Jack, another employee of defendant, and the possibility of plaintiff's coming to work for defendant was again discussed. Gordon Jack advised plaintiff that Ray Bellows, vice president of sales for defendant, would need to interview him before he could be hired by defendant. A meeting was arranged between the plaintiff and Ray Bellows.

Plaintiff and Ray Bellows met in Charlotte, North Carolina. Plaintiff testified that during the meeting he told Ray Bellows the names of the AT&T subsidiaries where he had previously been employed. Plaintiff further testified that at the meeting Ray Bellows stated that "based on [plaintiff's] past Bell System service and the relationship that existed between Northern Telecom and Bell Canada that if [plaintiff] came to work with Northern Tele-

com and worked there five years, that [his] previous Bell System service would be bridged."

Plaintiff further testified that he understood the term "bridging," as used within the Bell System, involved the crediting of the previous time that an employee had worked for a Bell System or related company towards the employee's entitlement to sick time, vacation, and pension benefits. Plaintiff testified that if an employee left a Bell System company and later returned to that company or another Bell System company, the employee would receive credit for all of his "Bell System time" after employment of five years. Plaintiff further testified that, since benefits such as retirement pay and vacation time increased with an employee's longevity, the promise of bridging represented a substantial inducement to him. To plaintiff the promise of bridging meant that, after five (5) years with defendant, he would be entitled to company benefits based upon an accumulated work time of eighteen (18) years and ten (10) months.

Plaintiff testified that, although Ray Bellows informed him that plaintiff would receive "bridging" of his Bell System service for purposes of determining "company benefits," no particular benefits were discussed. Plaintiff testified that at the time of his interview with Ray Bellows, he concluded defendant had essentially the same benefit packages generally offered in the telecommunications industry. Plaintiff did not become aware of the specific employee benefits offered by defendant until after he had commenced his employment with defendant.

After the interview with Ray Bellows in Charlotte, plaintiff was asked to travel to Raleigh, North Carolina, for the purpose of further employment discussions. Plaintiff made the trip to Raleigh in November of 1974. Plaintiff was offered a specific starting salary in a telephone conversation with Gordon Jack in January or February of 1975, and plaintiff indicated he would like the job. At the time of the telephone offer, plaintiff was not advised of the exact terms of his employment. It was agreed that he would complete the Vista Telephone project before commencing his work with defendant.

Shortly before commencing work with the defendant, plaintiff requested that defendant provide him with a letter confirming his employment. Plaintiff testified that he wanted to be certain that

Welsh v. Northern Telecom, Inc.

he would not have to relinquish the term "engineer" as part of his job title. Plaintiff received a letter dated 6 October 1975 from Bruce Hanke, employment supervisor, confirming defendant's offer of employment. In addition to confirming the offer of employment the letter provided, among other things, that plaintiff's job title would be "Switching Products Engineer"; plaintiff's salary would be $25,000 annually; and defendant would pay for plaintiff's moving expenses to Raleigh. The next-to-last paragraph of the letter provided:

> As a new employee of Northern Telecom you become eligible on your starting date for life insurance, accidental death and dismemberment insurance, hospital, surgical and major medical coverage; all provided at no expense to you. Complete details of our total benefit program will be discussed with you when you start work.

By letter dated 3 November 1975 plaintiff confirmed his verbal acceptance of the job offer. Neither defendant's letter to plaintiff nor plaintiff's letter to defendant referred to "bridging" of plaintiff's prior service within the AT&T System.

Plaintiff started working for defendant on 1 December 1975, more than a year following the interview with Ray Bellows. Plaintiff testified that throughout his course of negotiations leading up to his acceptance of employment with defendant, the only representative of defendant who ever told him that his prior service within the AT&T System would be "bridged" or credited for the purpose of determining defendant employee benefits was Ray Bellows.

After having worked for defendant for about two years, plaintiff had heard nothing further about the bridging of his prior AT&T service, so he orally requested confirmation of his right to bridging. By way of a memorandum dated 20 December 1978, plaintiff submitted a request to Mike Bruno, director of personnel, for such confirmation. On 7 March 1979 plaintiff was advised in a telephone conversation with Jim Patner, who was employed in defendant's personnel department in Nashville, Tennessee, that his prior AT&T service could be bridged with service for the defendant, but only if his employment with the defendant began before 1 June 1975. The plaintiff in turn responded to that telephone conversation with a memorandum dated 8 March 1979,

in which he set forth his reasons for believing that the 1 June 1975 date should not apply to him. Mike Bruno wrote a memorandum to plaintiff, dated 10 July 1979, in which he stated that the bridging question was still under study.

During the next six months, plaintiff received no further word about his right to bridging, and he again requested a confirmation of his right by way of a memorandum to Mike Bruno dated 14 December 1979. On 26 November 1980, plaintiff was advised by defendant that he would not receive credit for his prior service in the AT&T System. John L. Brown, corporate director of benefits and personnel systems for defendant, testified that at no time prior to rendering its final decision that plaintiff was not entitled to bridging did the defendant make any attempt to contact Ray Bellows to find out what promises he made to plaintiff.

Subsequent to 26 November 1980 plaintiff made several requests for a reconsideration by defendant of his right to bridging of his prior AT&T service. The defendant reaffirmed its decision of 26 November 1980.

Ray Bellows testified that he made no promise to plaintiff concerning "bridging" of plaintiff's prior service within the AT&T System. At the conclusion of all the evidence defendant made a motion for directed verdict, which the trial court denied. The trial court submitted the following issue to the jury:

> 1. Did Ray Bellows promise plaintiff that his prior service within the AT&T (Bell) System would be bridged with his service for the defendant for the purposes of determining the amount of retirement benefits and the amount of vacation time to which he was entitled?

The jury answered this factual issue in the affirmative.

The trial court entered judgment concluding that "a valid and enforceable contract exist[s] between plaintiff and defendant, obligating defendant to bridge plaintiff's prior service within the AT&T System with his service for defendant for the purposes of determining the amount of retirement benefits and the amount of vacation time to which plaintiff is entitled[.]" The court ordered defendant to "provide to the Plaintiff those retirement benefits and vacation time to which the Plaintiff would have been entitled

if the Plaintiff's service with the Defendant had commenced on February 1, 1962." Defendant gave notice of appeal.

[1] Defendant first assigns as error the trial court's failure to find that plaintiff's state law claims are preempted by ERISA, 29 U.S.C. § 1001, *et seq*. In his complaint plaintiff based his claim upon breach of contract and equitable estoppel, and at trial he proceeded on the breach of contract theory. In his complaint plaintiff alleged that as a result of defendant's breach of its employment contract with plaintiff, he has been denied vacation benefits to which he was entitled and pension benefits to which he will be entitled upon his retirement.

The purpose and scope of ERISA is summarized in *Shaver v. Monroe Construction Co.*, 63 N.C. App. 605, 306 S.E. 2d 519 (1983), *disc. rev. denied*, 310 N.C. 154, 311 S.E. 2d 294 (1984).

ERISA was enacted by Congress to foster interstate commerce and to protect the interests of participants in employee benefit plans by requiring the disclosure and reporting of financial and other information to participants and their beneficiaries, by establishing standards for fiduciaries, and by providing appropriate remedies, sanctions, and ready access to federal courts. 29 U.S.C. § 1001(b). "It is hereby further declared to be the policy of [ERISA] to protect . . . the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries" by providing adequate safeguards to assure the equitable character and financial soundness of such plans. 29 U.S.C. § 1001(c).

To eliminate the threat posed by conflicting or inconsistent State or local regulation of employee benefit plans, *see* 120 Cong. Rec. 29933; 120 Cong. Rec. 29197, Congress enacted a pre-emption clause, codified at 29 U.S.C. § 1144(a), which provides:

(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

> Congress also granted exclusive jurisdiction to the federal
> courts over all actions arising under the subchapter of
> ERISA dealing with the protection of employee benefit
> rights. 29 U.S.C. § 1132(e)(1). It, however, granted concurrent
> jurisdiction to the states over actions brought by a partici-
> pant or beneficiary to recover benefits due him or her under
> the terms of that plan, or to enforce or clarify his or her
> rights under the terms of that plan. 29 U.S.C. § 1132(e)(1); 29
> U.S.C. § 1132(a)(1)(B).

*Id.* at 607-08, 306 S.E. 2d at 521-22.

Defendant contends that plaintiff's cause of action *relates* to
defendant's pension plan and *thus* is preempted by § 1144(a) of
ERISA since § 1144(a) specifically provides that the provisions of
the subchapter dealing with the protection of employee benefit
rights "shall supersede any and all State laws insofar as they may
now or hereafter relate to any employee benefit plan" subject to
the Act. Thus, the issue we must decide is whether plaintiff's
breach of contract claim *relates* to defendant's pension plan.

We find *Shaver v. Monroe Construction Co.,* and authority
cited therein, controlling on this issue, and we find defendant's
argument unpersuasive.

In *Shaver*, plaintiff brought a claim for fraudulent misrepre-
sentation, among other claims, alleging that defendants misrepre-
sented to plaintiff the continuing existence of a pension plan for
the purpose of inducing plaintiff to remain with defendants and to
forego bonuses and salary increases. The court held that plain-
tiff's claim was not preempted by ERISA:

> Plaintiff's claim does not concern the substance of the plan,
> nor does it concern the regulation of a pension plan. The pen-
> sion plan is only incidentally or tangentially involved. Be-
> cause plaintiff's claim is not covered by ERISA, the federal
> courts do not have jurisdiction. *Fulk v. Bagley*, 88 F.R.D. 153
> (M.D.N.C. 1980); *Martin v. Bankers Trust Co.*, 565 F. 2d 1276
> (4th Cir. 1977).

*Id.* at 610, 306 S.E. 2d at 523.

*Shaver* cited with approval the case of *Shaw v. Westinghouse
Elec. Corp.*, 276 Pa. Super. 220, 419 A. 2d 175 (1980). In *Westing-*

*house,* the employee sued his employer for breach of an employment contract. He alleged, among other things, that one of his employment contract terms was that he would receive a pension equal to 60% of his base salary. He claimed his employer did not pay him promised salary increases, causing him to lose some of his pension benefits. The court held that ERISA did not govern this claim, and thus the employee's state law claim was not preempted. The court concluded that such a claim does not "relate to" the plan or attempt to regulate the plan, even though the trial court may have to make determinations of the employee's present and future rights to benefits under the plan to decide if the employee's rights under the employment contract have been violated.

As in *Westinghouse,* the plaintiff in the case at bar claims that his employer breached the terms of the employment contract by refusing to provide him with promised benefits. In *Westinghouse,* the disputed benefit was additional salary, while in the present case, the disputed benefit was the promised credit for plaintiff's prior years of service with other telecommunications employers.

Here plaintiff has a claim against defendant for amounts in addition to pension plan benefits. His action is not against the plan. Rather, his action is against the defendant for failing to uphold its promise to provide benefits in excess of those to which he would otherwise be entitled under the plan. His claim neither concerns the substance of the pension plan nor the plan's regulation. The plan is only incidentally or tangentially involved. Because plaintiff's claim is only tangential to the plan, his claim is not preempted by ERISA. *Shaver v. Monroe Construction Co.,* 63 N.C. App. 605, 306 S.E. 2d 519.

[2] Defendant's other assignments of error concern the trial court's denial of defendant's motions for a directed verdict and judgment notwithstanding the verdict. Defendant contends the trial court should have granted its motions because no valid and enforceable contract existed between plaintiff and defendant obligating defendant to bridge plaintiff's prior service within the AT&T (Bell) System for purposes of determining the amount of retirement benefits and vacation time to which plaintiff is entitled.

In its brief defendant contends there was no valid contract "because the evidence established that Ray Bellows' statement concerning bridging was too indefinite to give rise to a valid contract between plaintiff and defendant, and there was no meeting of the minds with respect to bridging of plaintiff's prior service with the AT&T System." The basis of defendant's contention is that there is no evidence as to what the parties meant by the terms "bridging" and "company benefits."

The standard of review on a motion for directed verdict and a motion for judgment notwithstanding the verdict is the same: whether the evidence taken in the light most favorable to the plaintiff is sufficient as a matter of law. *See Huff v. Thornton*, 287 N.C. 1, 9-10, 213 S.E. 2d 198, 205 (1975).

To constitute a valid contract there must be a meeting of the minds; that is, "the parties must assent to the same thing in the same sense. (Citations omitted.)" *Sprinkle v. Ponder*, 233 N.C. 312, 319, 64 S.E. 2d 171, 177 (1951). "Where there is such uncertainty that it cannot be known what is contracted for, the contract is unenforceable. (Citations omitted.)" *Id*. The law, however, does not favor the destruction of contracts on account of uncertainty, and "the courts will, if possible, so construe the contract as to carry into effect the reasonable intent of the parties, if it can be ascertained." *Fisher v. John L. Roper Lumber Co.*, 183 N.C. 486, 490, 111 S.E. 857, 860 (1922). In order to avoid destruction of contracts, courts should attempt to determine the intent of the parties from the language used, construed with reference to the circumstances surrounding the making of the contract. *Chew v. Leonard*, 228 N.C. 181, 44 S.E. 2d 869 (1947).

In the case at bar, we find the promise of Ray Bellows to the plaintiff is sufficiently definite, when the language used is construed in accordance with the attendant circumstances, to create a contract.

The evidence taken in the light most favorable to the plaintiff shows that Ray Bellows told plaintiff that "based on [plaintiff's] past Bell System service and the relationship that existed between Northern Telecom and Bell Canada that if [plaintiff] came to work with Northern Telecom and worked there five years, that [plaintiff's] previous Bell System service would be bridged." Plaintiff specifically advised Ray Bellows on the exact

companies within the AT&T System he had worked for. Ray Bellows told plaintiff that bridging would be an advantage to plaintiff because of plaintiff's previous Bell System service and that "if [plaintiff] came to work that after five years [his] service would be bridged to the application of company benefits." Plaintiff testified that he was familiar with the telecommunications industry and the types of benefits normally offered, and that companies necessarily offered the same benefits in order to remain competitive. Here there is no dispute as to the type of company benefits, including a retirement plan, that defendant normally offers. Defendant admits in its brief that Ray Bellows' statement concerning bridging and company benefits is made "intelligible by reference to established company policy or the retirement plan." Plaintiff gave a definition of "bridging" as he understood it and as it was operating in the communications employment industry at that time:

> Well, bridging within the context of employment and most assuredly within the context of the Bell System, was a reference made to the crediting of previous time that we had worked for that company or related company of any type towards your seniority again for sick time, vacations, pension benefits, seniority for choosing when you could take your vacation because everybody always wanted vacation in July.

> . . . As an example, if you worked five years and then you quit and came back to it three years later, after another five years your time would be bridged and you would have ten years service just as if you had worked the full ten years for that company, whether your previous five years had been for that company or another company in the System, and in some cases even companies that were not within the System. That's bridging, as I understand it and as it was operating at that time.

Furthermore, the testimony of defendant's witnesses at trial did not indicate that there was any confusion as to what the terms "bridging" and "company benefits" meant. In their testimony, defense witnesses Ray Bellows and John Brown gave no indication that plaintiff's definition of "bridging," as he understood it and as generally understood in the industry, was incorrect or contrary to their understanding of "bridging." The only true

dispute is whether Ray Bellows promised plaintiff that defendant would bridge his prior Bell System service as an inducement for plaintiff to take the job. The jury found that Ray Bellows made such a promise. Taking the evidence in the light most favorable to the plaintiff, the evidence was sufficient to constitute a valid and enforceable contract.

No error.

Judges BECTON and JOHNSON concur.