UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

WILLIAM B. JENKINS,

*Plaintiff-Appellant,*

v.

AKZO NOBLE COATINGS,
INCORPORATED,

*Defendant-Appellee.*

No. 01-2200

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(CA-97-124-V)

Argued: April 4, 2002

Decided: May 21, 2002

Before WILKINSON, Chief Judge, and WILLIAMS and
TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Jim D. Cooley, WOMBLE, CARLYLE, SANDRIDGE &
RICE, P.L.L.C., Charlotte, North Carolina, for Appellant. Charles
Matthew Keen, OGLETREE, DEAKINS, NASH, SMOAK & STEW-
ART, P.C., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Amy
L. Cox Gruendel, WOMBLE, CARLYLE, SANDRIDGE & RICE,
P.L.L.C., Charlotte, North Carolina, for Appellant. Robert A. Sar,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

William Jenkins appeals from the district court's dismissal at the summary judgment stage of his suit alleging breach of contract and fraudulent misrepresentation in connection with his departure from employment with Akzo Nobel Coatings, Inc. Because North Carolina's employment at will doctrine bars Jenkins's breach of contract claim, and because Jenkins failed to make the requisite evidentiary showing to survive summary judgment as to his fraudulent misrepresentation claim, we affirm.

I.

Akzo and its affiliates manufacture coatings for use on furniture and other wood products. With the exception of a three-year period during which he worked for a family business, Jenkins was employed by Akzo continuously from 1969 until his departure in 1997. In 1990, Jenkins was asked to accept a position as Director of Sales and Marketing for Akzo's start-up operation in the Far East, which was to be headquartered in Singapore. Jenkins accepted the assignment, on the condition that he would have a job when he returned to the United States. Akzo promised Jenkins that he would be returned to a position in the company's United States operations upon the conclusion of his foreign assignment. This commitment was memorialized in a document entitled "Southeast Asia Expatriate Contract" (the contract), executed by both parties in August of 1991 and subsequently modified in June and October of 1992. (J.A. at 72, 89, 90.) The relevant provisions of the contract provided that Jenkins's "assignment [would]

extend for approximately two (2) years [until] June 1993," and "any extension or change in status [would] be at terms and conditions mutually agreed upon" by Jenkins and Akzo. (J.A. at 72.) Further, the agreement included a "position guarantee at repatriation," the text of which was revised twice. The August 1991 contract stated that "assuming satisfactory job performance, the position to which [Jenkins] [would] return upon repatriation to the United States [would] be at a base compensation package equivalent with the expatriate assignment . . . [and] such position could be at any USA location where [Akzo] maintains a manufacturing facility." (J.A. at 73.) By an "addendum" dated June 16, 1992, which addressed Jenkins's promotion to Southeast Asia Regional Manager, the parties agreed that "upon completion of this assignment, Mr. Jenkins [would] be assigned in an available position within the organization commensurate with his abilities and training. The salary for this repatriation assignment [would] be in line with the salary range for the job to which he is assigned." (J.A. at 89.) By an "addendum" dated October 14, 1992, the language was modified to state that:

> Upon completion of this agreement, Mr. Jenkins [would] be assigned in an available position within the organization commensurate with his abilities and training. The salary for the repatriation assignment [would] be a minimum of $75,000 base per year plus the normal annual increases for each year served in the Far East if he is performing his general manager function satisfactorily.

(J.A. at 90.) Finally, the original contract stated, in a provision entitled "Termination/Early Discontinuance of Agreement," unmodified by either the June or October 1992 addenda, that "in the event of [Jenkins's] separation from Akzo . . . the company [would] reimburse all expenses" related to Jenkins's return to the United States. (J.A. at 72.) When the last addendum was executed in October 1992, Jenkins's supervisor told him that rather than re-executing the contract when its term expired, "we'll just continue under those terms." (J.A. at 285.)

At various times during 1994, 1995, and 1996, Jenkins expressed to his superiors his desire to leave Singapore. Jenkins was told in April 1996, by his supervisor, Rad Darby, that he would be repatri-

ated when there was a job available in the United States and a replacement could be found for him in Singapore.

Citing performance issues,[1] however, on January 6, 1997, Akzo terminated Jenkins as director of sales and marketing and regional manager for Southeast Asia and offered him another position — Country Manager for Indonesia — that both parties considered a demotion. In the event that Jenkins declined the Indonesia Country Manager position, Akzo offered him a severance package. Jenkins decided to leave Akzo and took a reduced severance package because he did not wish to release his legal claims against Akzo.

On June 27, 1997, Jenkins filed a complaint in the Superior Court of Caldwell County, North Carolina against Akzo, seeking relief for breach of contract and fraudulent misrepresentation. Akzo removed the action to the district court based on diversity jurisdiction and filed a Motion to Dismiss as to all claims on August 4, 1997. The case was assigned to a magistrate judge for a report and recommendation. *See* 28 U.S.C.A. § 636 (West 1999). On December 8, 1997, the magistrate judge issued a "memorandum and recommendation" that Akzo's motion be denied in its entirety. (J.A. at 197-199.) Jenkins then filed an amended complaint adding a claim for violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621 *et seq.* (West 1999). Akzo filed objections to the recommendation, and after conducting a de novo review pursuant to 28 U.S.C.A. § 636, the district court adopted the magistrate judge's recommendation and denied Akzo's motion to dismiss on September 16, 1998. After completion

---

[1]Akzo contends that Jenkins's performance was unacceptable because he helped to develop a product that alienated a major customer when it did not perform correctly; because he entered into property leases in China without the proper approvals; because financial goals for the Far East operation were not met; because embezzlement and arson allegedly occurred at a Malaysian plant that was ultimately under Jenkins's management; because Jenkins allegedly discharged an employee without documentation, leading to litigation; and because Jenkins allegedly did not do enough to retain a key saleswoman, Laura Boon. Jenkins contests these allegations and notes that he received substantial performance-based bonuses during each year of his employment in Singapore, as well as increases in base pay of approximately 30%.

of discovery, Akzo moved for summary judgment as to all of Jenkins's claims. The district court referred Akzo's motion to the magistrate judge for discovery and a recommendation.

On March 1, 2000, the magistrate judge issued a "memorandum and recommendation" that summary judgment be granted in favor of Akzo as to Jenkins's ADEA claim but denied as to Jenkins's claims for breach of contract and fraudulent misrepresentation. Akzo objected to the magistrate judge's recommendation insofar as it involved denial of summary judgment for Akzo on the contract and fraud claims. Jenkins did not object to the magistrate judge's recommendation to grant summary judgment to Akzo on his ADEA claim.[2] On September 5, 2001, after conducting a de novo review as required by 28 U.S.C.A. § 626(b)(1) (West 1999), the district court issued a "memorandum and order" granting summary judgment in Akzo's favor as to the contract and fraud claims. Jenkins timely appealed from this order.

## II.

The district court granted summary judgment to Akzo on Jenkins's breach of contract claim, finding that any contract between Jenkins and Akzo lacked a definite term and thus could not rebut the strong presumption in favor of at will employment mandated by North Carolina law. This court reviews the district court's entry of summary judgment in Akzo's favor de novo. *American Legion Post 7 v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether there is a genuine issue of material fact, "the evidence of the nonmoving party is to be believed and all justifiable

---

[2]Jenkins thus effectively abandoned his ADEA claim, and he does not challenge the dismissal of that claim in this proceeding. *See Thomas v. Arn*, 474 U.S. 140, 145-46 (1985); *United States v. Schronce*, 727 F.2d 91, 93-94 (4th Cir. 1984) (holding that a failure to timely object to magistrate judge's recommendations waives any challenge to those recommendations).

inferences must be drawn in its favor." *Durham*, 239 F.3d at 605. A mere scintilla of proof will not suffice to prevent summary judgment, however; the question is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party" resisting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (internal quotation marks omitted). A failure to produce evidence sufficient to permit a jury to find for the nonmovant plaintiff as to one of the elements of his cause of action renders all other issues of fact immaterial. *Celotex*, 477 U.S. at 323. "As a court sitting in diversity, we have an obligation to interpret the law in accordance with the [jurisprudence of the North Carolina Supreme Court], or where the law is unclear, as it appears that the [North Carolina Supreme Court] would rule." *Wells v. Liddy*, 186 F.3d 505, 527-28 (4th Cir. 1999). "To forecast a decision of the state's highest court we can consider, *inter alia*: canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." *Id.*

North Carolina is an employment at will state, such that in general, an employee without a definite term of employment may be discharged for any reason or for no reason. *Coman v. Thomas Mfg. Co.*, 381 S.E.2d 445, 446 (N.C. 1989). Under the employment at will doctrine, the burden of showing that a contract of employment exists and is sufficiently specific in its terms to rebut the presumption of employment at will rests with the employee. *Rosby v. Gen. Baptist State Convention*, 370 S.E.2d 605 (N.C. Ct. App. 1988). "[I]n the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Kurtzman v. Applied Analytical Indus., Inc.*, 493 S.E.2d 420, 422 (N.C. 1997). The "limited" exceptions to the at will rule recognized by the North Carolina Supreme Court include a contract for a "definite period of employment," federal and state anti-discrimination statutes, and situations wherein public policy bars discharge, as when an employee is discharged for refusing to break the law. *Id.*; *Amos v. Oakdale Knitting Co.*, 416 S.E.2d 166, 168 (N.C. 1992). Terms such as "a regular permanent job" or "if you do your job, you'll have a job," are "not sufficiently definite to remove the employment relationship from the at-

will presumption." *Id.* at 422-23; *see also Malever v. Kay Jewelry Co.*, 25 S.E.2d 436, 437 (N.C. 1943) (holding that a "promise of permanent employment simpliciter" implies "an indefinite general hiring, terminable at will."). Because the employment at will rule serves as "an incentive to economic development, and any significant erosion of it could serve as a disincentive," North Carolina courts have been reluctant to permit the rebuttal of the policy-based at will presumption. *Kurtzman*, 493 S.E.2d at 423.

It is clear that Jenkins's employment agreement in this case was not one for a definite term. While the original agreement was one for a definite term, the original agreement expired in 1993; the contract itself provided that "any extension . . . will be at terms and conditions mutually agreed upon," and the parties agreed to continue under the terms of the agreement for an indefinite period. (J.A. at 72, 285). Further, the contract expressly provided a means for its termination; in a provision entitled "Termination/Early Discontinuance of Agreement," the contract simply stated that if Jenkins separated from Akzo's employ, Akzo would be obligated to pay expenses associated with Jenkins's move back to the U.S. (J.A. at 78.) It is undisputed that Akzo reimbursed Jenkins for those expenses.

There is no contention on appeal that Jenkins was terminated in violation of any antidiscrimination law or that he was terminated for reasons of the sort deemed by North Carolina courts to trigger the public-policy exception to employment at will — e.g., because he refused to violate the law or to facilitate a violation of the law. Consequently, Jenkins has failed, under the employment at will jurisprudence recently reaffirmed in *Kurtzman*, to rebut the at will presumption.

Seeking to avoid this result, Jenkins argues that this suit is not one for wrongful termination, and thus, it is not controlled by *Kurtzman* and other North Carolina cases reaffirming the vitality of the employment at will doctrine. Jenkins argues that this action is unaffected by North Carolina's employment at will jurisprudence because Jenkins seeks recovery for an employer's failure to provide a benefit — repatriation to a comparable job with Akzo — to which he is contractually entitled. Thus, Jenkins maintains that his action is analogous to a right of return to a union position in the event that a management promo-

tion did not "work out," which the North Carolina Court of Appeals has held to be unaffected by employment at will. *Bennett v. Eastern Rebuilders, Inc.*, 279 S.E.2d 46, 48-50 (N.C. Ct. App. 1981). Similarly, Jenkins contends that his repatriation guarantee is analogous to an agreement to "bridge" seniority from a previous job in order to allow for an enhancement of retirement benefits, which is not rendered unenforceable by employment at will. *Welsh v. Northern Telecom, Inc.*, 354 S.E.2d 746, 751 (N.C. Ct. App. 1987).

*Bennett* and *Welsh* are, however, inapposite. *Bennett* involved a promise to terminate the employment agreement only by first returning the employee to a union position. *Bennett*, 279 S.E.2d at 49. An employee "is not entitled to recover damages [under the *Bennett* approach] beyond the lawful termination" of an employment agreement. *Bloch v. Paul Revere Life Ins. Co.*, 547 S.E.2d 51, 59 (N.C. Ct. App. 2001). Here, Jenkins's contract facially provides that termination is permissible and simply gives Jenkins a right to payment of his moving expenses in the event of termination of the agreement. *Welsh* involved a right to promised *pension benefits*; North Carolina courts have "distinguished between issues of benefits or compensation earned during employment and the issue of an employee['s] entitlement to continued employment." *Rucker v. First Union Nat'l Bank*, 389 S.E.2d 622, 625 (N.C. Ct. App. 1990). Claims for accrued benefits, as distinct from claims for prospective continued employment or working conditions, are not affected by the employment at will doctrine. Jenkins, however, seeks a remedy for Akzo's failure to continue to employ him in a certain capacity, not a remedy for any failure to provide him with accrued benefits for past service.

Assuming that Jenkins's demotion amounted to a constructive discharge,[3] it is clear that North Carolina law permits discharge or demo-

---

[3]Jenkins was not formally terminated by Akzo; instead, he was demoted and chose to leave the company rather than accept an assignment as Indonesia Country Manager. The parties implicitly treat his demotion as a constructive discharge under North Carolina law. The North Carolina Court of Appeals has questioned the existence of the constructive discharge doctrine. *See Graham v. Hardee's Food Sys., Inc.*, 465 S.E.2d 558, 560 (N.C. Ct. App. 1996) (noting that North Carolina courts "have yet to adopt the employment tort of constructive discharge,"

tion in cases such as this one, with or without cause. The district court's analysis of the North Carolina Supreme Court's decision in *Kurtzman* is cogent and accurate. While in *Kurtzman* the court did deny that "a definite term of service is the sole means of contractually removing the at-will presumption," it gave no hints as to what elements other than a definite term of service could suffice to rebut the presumption. *Kurtzman*, 493 S.E.2d at 421. No cases from the North Carolina Supreme Court suggest any other means, and this court, sitting in diversity, should not "surmise or suggest . . . expansion" of state law. *Tritle v. Crown Airways, Inc.*, 928 F.2d 81, 84 (4th Cir. 1990) (internal quotation marks omitted). The district court properly declined to read into *Kurtzman*'s vague disclaimer the authority to craft a wholly novel exception to the employment at will doctrine. Consequently, the district court correctly found that Jenkins was an employee at will; it follows that whether he was constructively discharged or demoted, he cannot maintain a claim either for wrongful discharge or for breach of contract based on Akzo's failure to provide him with continued employment in the United States or anywhere else.[4] Fidelity to North Carolina's employment at will doctrine requires that we affirm the district court's grant of summary judgment to Akzo on Jenkins's breach of contract claim.

---

and resolving a wrongful discharge claim wherein an employee quit after a change in working conditions on the *assumption* that constructive discharge is a viable theory). *But see Coman v. Thomas Mfg. Co., Inc.*, 381 S.E.2d 445, 446 (N.C. 1989) (noting without analysis that a reduction in pay of "at least fifty percent" is "tantamount to a discharge," and proceeding to analyze the case before it under a wrongful discharge framework); *Doyle v. Asheville Orthopaedic Assoc., P.A.*, 557 S.E.2d 577, 579 (N.C. Ct. App. 2001) ("evidence establishing constructive discharge must demonstrate that the employer deliberately made working conditions intolerable and thereby force[d] [the employee] to quit").

[4]Accordingly, we do not address Akzo's argument that under ordinary contract principles, without regard to the employment at will doctrine, it is entitled to summary judgment based on a lack of definiteness and consideration.

### III.

Jenkins next contends that the district court erred in granting summary judgment to Akzo on his claim for fraudulent misrepresentation. The elements of an action for fraudulent misrepresentation in North Carolina are (1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with the intent to deceive (scienter); (4) upon which the injured person reasonably relied to his detriment. *Pearce v. American Defender Life Ins. Co.*, 343 S.E.2d 174, 178 (N.C. 1986).

Jenkins failed to create a disputed factual issue as to two of the elements of a claim for fraudulent misrepresentation: reasonable reliance and scienter. A fraud claim based on a promise of a future act may succeed only where there is evidence of scienter tending to show that the promisor intended to deceive and had no intention of performing the promise at the time he made it. *Johnson v. Phoenix Mut. Life Ins. Co.*, 266 S.E.2d 610, 616 (N.C. 1980), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385 (N.C. 1988). If Jenkins can show an otherwise actionable misrepresentation, he must show that he relied on this misrepresentation to his detriment. *Id.* at 615. In this case, the scienter and reliance elements are closely related. Jenkins clearly relied on representations that he would be repatriated that were made in 1991 when he moved to Singapore and accepted an Akzo position there. No evidence indicates, however, that Akzo knew when it sent Jenkins to Singapore that it would not repatriate him; Jenkins's evidence that Akzo failed to repatriate other Asia employees in the mid-1990s, after the Asian operation had been up and running for several years, says nothing about the state of mind of any relevant decisionmaker in 1991, when the first representations were made to Jenkins regarding repatriation. In turn, the later statements made by Jenkins's supervisors in 1995 and 1996, to the effect that he would be repatriated as soon as a position was available in the United States, were made when Jenkins was already living in Singapore. Even if we assume that a reasonable finder of fact could infer scienter from Jenkins's allegedly performance-based demotion shortly after these later statements were made, Jenkins must nonetheless show that he relied on these statements to his detriment. *Johnson*, 266 S.E.2d at 616. This he cannot do on the summary judgment record before us.

At most, Jenkins could claim that he *remained* in Singapore in reliance on a promise that he would be repatriated to a comparable job. But the only evidence cited by Jenkins in support of this assertion is two pages of testimony indicating that Jenkins wanted to come back to the United States and asked to be repatriated several times. (J.A. at 261-63.) What is missing is any evidence that, but for the allegedly fraudulent statements, he would have quit and returned to the United States or taken any other action. Thus, there is no evidence in the record that would allow a reasonable finder of fact to determine that Jenkins detrimentally relied on any statement for which there is any evidence, even indirect, of scienter. In short, there are statements, made in 1991, that may have induced reliance but were not made with scienter; and there are statements made in 1996 that, even assuming scienter could be inferred, lack evidence of detrimental reliance. What is missing is a specific representation that a jury could conclude was made with knowledge that it was false and on which Jenkins relied to his detriment. Consequently, the district court properly granted summary judgment in Akzo's favor as to the fraudulent misrepresentation claim.

Given Jenkins's failure of proof, we need not decide whether fraudulent misrepresentations that induce an employee to accept or continue to hold a position must include a promise of employment for a definite term in order to be actionable.[5]

---

[5]The North Carolina Court of Appeals has held that no definite term is needed in the fraudulent misrepresentation context. *Liggett Group, Inc. v. Sunas*, 437 S.E.2d 674, 681 (N.C. Ct. App. 1993). In the absence of a controlling decision of the North Carolina Supreme Court, the *Sunas* decision is entitled to persuasive weight. *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 512 (4th Cir. 1999). North Carolina law is not without tension on this point, however: the *Sunas* court found itself to be constrained by an earlier decision, *Walton v. Carolina Tel. & Tel. Co.*, 378 S.E.2d 427, 434 (N.C. Ct. App. 1989), which held that fraudulent inducement claims do not allege wrongful termination and are therefore not barred by employment at will, and stated that "at first blush, we are inclined to agree" with a rule contrary to *Walton*. *Sunas*, 437 S.E.2d at 681.

IV.

This case brings into focus difficult policy questions regarding the strength of the North Carolina employment at will presumption, the need to protect the bargained-for expectations of employees and employers, and the importance of bright-line rules governing the employment relationship. The task of developing rules that strike the appropriate balance between these sometimes competing objectives is, however, assigned to the courts of North Carolina; in diversity cases such as this one, we must apply the rules and principles developed by the relevant state's courts. The North Carolina Supreme Court has made it clear that an agreement for an indefinite term such as the one in this case does not succeed in removing the presumption of at will employment, and we are duty-bound to apply that policy-based rule. Because the employment at will doctrine bars Jenkins's breach of contract claims and because Jenkins failed to create a genuine issue of material fact as to the reliance and scienter elements of his fraudulent misrepresentation claim, the district court's grant of summary judgment to Akzo must be affirmed.

*AFFIRMED*